O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOMADIX, INC.,                    )  Case No. CV 14-08256 DDP (VBKx)
                                  )
            Plaintiff,            )  **ORDER ON MOTIONS TO DISMISS**
                                  )
        v.                        )  [Dkt. Nos. 34 & 35]
                                  )
HOSPITALITY CORE SERVICES         )
LLC, d/b/a BLUEPRINT RF,          )
                                  )
            Defendant.            )
_____    )

        Presently before the Court are two motions to dismiss portions
of Plaintiff's First Amended Complaint ("FAC"), which alleges
patent infringement.  The motions argue invalidity of the asserted
patents under 35 U.S.C. § 101 and failure to state a claim for
infringement under 35 U.S.C. § 271.  (Respectively, Dkt. Nos. 34
(the "Sec. 101 Motion") and 35 (the "Sec. 271 Motion").)  Having
heard oral arguments and reviewed the parties' submissions, the
Court adopts the following order.

**I.    BACKGROUND**

        Plaintiff holds United States patents numbered 6,636,894 ("the
'894 patent"), 6,226,677 ("the '677 patent"), 6,868,399 ("the

'399 patent"), 8,156,246 ("the '246 patent"), 8,266,266 ("the '266 patent"), 8,266,266 ("the '266 patent"), 8,364,806 ("the '806 patent"), 8,788,690 ("the '690 patent").  (FAC at 3-4.)  These patents – especially '399 and '690[1] – disclose methods for charging internet users in places like hotels by redirecting them to a webpage that can interface with a "property management system" ("PMS"), which is a kind of legacy computer system that charges for things like phone calls.  (Opp'n to Sec. 101 Mot. at 1-2.)  The hotel (or other internet-providing venue) can charge customers for internet service using their traditional PMS, in a manner that is "transparent" to the end user, without the customer having to install special billing software.  (Id.)

These methods involve the use of pre-existing or "off-the-shelf" components whose patents are not necessarily owned by Plaintiff, with the exception of a "gateway device" manufactured by Plaintiff.  (See, e.g., Decl. Alan Laquer, Ex. 1, U.S. Patent No. 8,788,690, fig. 3 (showing the "Nomadic router," a gateway device, integrated into a larger system that uses a generic "host device" and "communications device" and implements "standard" interfaces and network algorithms).)

Defendant manufactures gateway devices in the United States and sells them in the United States and abroad.  (FAC, ¶ 34-36.) The thrust of Plaintiff's infringement allegations appears to be

---

[1]These appear to be the primary patents at issue in these motions.  (See Sec. 101 Motion at 1; Sec. 271 Motion at 20-23; Sec. 271 Reply at 2-3.)  However, the Sec. 271 Motion does appear to be directed, in part, at the other patents as well.  (See Sec. 271 Mot. at 14 ("The claims for divided infringement under all patents requiring the Dominion gateway 'in combination with' other components provided by other parties should therefore be dismissed.").)

1   that Defendant makes its gateway devices with the intention that

2   they be slotted into systems that infringe on Plaintiff's patented

3   systems, in the place where the "Nomadic router" or other device

4   manufactured by Plaintiff would normally be.  (E.g., FAC, ¶ 57

5   ("[W]ith knowledge of the '894 patent, Blueprint RF has provided

6   products and components knowing that they, alone or as material

7   components in combination with other components, infringe the '894

8   patent, and contributed to others' infringement . . . .").)

9   Plaintiff also alleges that Defendant directly infringes the

10  patents when it uses such systems in the course of testing the

11  installation of its gateway devices.  (E.g., Id. at ¶ 58.)

12      Defendant brings these motions to dismiss arguing that the

13  '399 and '690 patents are invalid, and that the claims FAC as a

14  whole should be dismissed as either inadequately pleaded or not

15  possible as a matter of law.  (Respectively, Dkt. Nos. 34 (the

16  "Sec. 101 Motion") and 35 (the "Sec. 271 Motion").)

17  **II.  LEGAL STANDARD**

18      An order to survive a motion to dismiss for failure to state a

19  claim, a complaint need only include "a short and plain statement

20  of the claim showing that the pleader is entitled to relief."  Bell

21  Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v.

22  Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include

23  "sufficient factual matter, accepted as true, to state a claim to

24  relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.

25  662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  When

26  considering a Rule 12(b)(6) motion, a court must "accept as true

27  all allegations of material fact and must construe those facts in

28

the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

**III. DISCUSSION**

**A.   Motion to Dismiss on Grounds of Invalidity (the "Sec. 101 Motion")**

The Court acknowledges the arguments Defendant has advanced in the Sec. 101 Motion.  However, patent law is a fact-intensive field.  Although the Court has the patents in question before it right now, (Dkt. Nos. 39-1, 39-2), the exact functioning of the patented systems has not yet been fully briefed.  Patents are entitled to a presumption of validity, and individual claims in a patent are presumed valid even if other claims in the same patent are ruled invalid.  35 U.S.C. § 282(a).  Moreover, while "claim construction is not an inviolable prerequisite to a validity determination under § 101," usually it will "be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).  For this reason, "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." Ultramercial, Inc. v. Hulu, LLC, 722 F.3d 1335, 1338 (Fed. Cir. 2013) cert. granted, judgment vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC, 134 S. Ct. 2870 (2014).

The Court therefore declines, at this stage in the litigation, to declare the '399 and '690 patents invalid.

4

**B.    Motion to Dismiss on Grounds of Failure to Adequately Plead**
**Infringement Claims (the "Sec. 271 Motion")**

Defendant also moves to dismiss Plaintiff's claims on the grounds that they do not properly allege infringement.  Like the Sec. 101 Motion, the Sec. 271 Motion raises fact-intensive issues, such as whether Defendant must "use" the entire patented system in order to install its gateway devices, whether Defendant can receive some "benefit" from such testing, whether Defendant's device or features thereof have substantial non-infringing uses, and whether the patents are actually directed to a "method" rather than a physical system.  The Court therefore finds that the infringement issues will also be better addressed on a more complete factual record.

However, in order to better shape the litigation going forward, the Court rules on the following legal issues.

**1.    Specific Intent to Induce Infringement**

Defendant argues that Plaintiff does not plead sufficient facts to allege induced infringement under 35 U.S.C. § 271(b) or export infringement under 35 U.S.C. § 271(f)(1), because the Plaintiff does not plead a specific intent on Defendant's part to induce infringement.  (Sec. 271 Mot. at 15-16; Sec. 271 Reply at 7-8.)

The Supreme Court has held that "[e]vidence of active steps ... taken to encourage direct infringement, such as advertising an infringing use *or instructing how to engage in an infringing use*, show an affirmative intent that the product be used to infringe . . .

5

1   . ." <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S.
2   913, 936 (2005).[2]

3       Here, Plaintiff has alleged that Defendant provides
4   instructions to its customers "instructing them to use the . . .
5   Dominion gateways' captive portal feature and PMS-billing feature."
6   (FAC, ¶ 45.)  Similarly, Plaintiff alleges that Defendant provides
7   instructions to end-users on how to obtain internet access and that
8   Defendant trains hotel employees to assist guests to obtain network
9   access.  (<u>Id.</u>)  Taken with the other allegations that obtaining
10  such internet access requires the infringing use of the patented
11  systems as a whole, (<u>e.g.</u>, <u>id.</u> at ¶ 73-74), these pleadings suffice
12  to allege that Defendant took "active steps" to encourage
13  infringement, and therefore they are sufficient to allege "an
14  affirmative intent that the product be used to infringe."
15  <u>Grokster</u>, 545 U.S. at 936.

16  **2.   Affirmative Defenses**

17      Defendant also argues that it has "good-faith defenses" to
18  Plaintiff's allegations of induced infringement – namely, that the
19  patents are invalid – and that Plaintiff has not addressed those
20  defenses in its FAC.  However, a plaintiff "is not required to
21  plead on the subject of an anticipated affirmative defense."
22  <u>United States v. McGee</u>, 993 F.2d 184, 187 (9th Cir. 1993).  All
23  Plaintiff need do or should do at the pleading stage is to allege
24  facts which, if true, would plausibly state a claim for relief.

25

26

27      [2]<u>Grokster</u> is a copyright rather than a patent case, but the
28  Federal Circuit cites it for the standard in patent cases as well.
    <u>DSU Med. Corp. v. JMS Co.</u>, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

**3.    Whether to Consider "Features" of Defendant's Device, Or Only the Whole Device, When Assessing "Substantial Non-Infringing Uses"**

A claim for contributory infringement is a claim that the defendant sells a component "especially made or especially adapted for use in" a machine or process that infringes a patent.  35 U.S.C. § 271(c).  The defendant is not liable for contributory infringement, however, if the component in question is "suitable for substantial noninfringing use."  Id.  Defendant argues that Plaintiff does not plead sufficient facts to allege contributory infringement under 35 U.S.C. § 271(c), because the FAC does not plausibly allege that Defendant's gateway devices have no substantial non-infringing uses.

The parties seem to agree that this question turns on the level of analysis: Defendant's gateways, *taken as a whole device*, may have substantial non-infringing uses, because they can be used to access the internet or other networks even if their "captive portal" and "PMS billing" features are not used.  (Sec. 271 Mot. at 17 & n.18)  On the other hand, Plaintiff argues that the captive portal and PMS billing *features* of the gateway are especially adapted for infringing uses and do not have substantial non-infringing uses.  Plaintiff further argues that Defendant cannot escape liability for contributory infringement by embedding infringing features in a larger product that has non-infringing uses, citing Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1338 (Fed. Cir. 2008).

Defendant argues that Ricoh does not apply, because "the non-infringing uses are integral gateway operations," and so do not

7

constitute an "additional, separable feature" that is non-
infringing.  (Sec. 271 Reply at 10 (quoting <u>Ricoh</u>, 550 F.3d at
1337).)  Apart from this being partly a factual claim (no party has
yet produced evidence showing what operations are "integral" to
gateway operation), as a rule of law it produces an untenable
result.  Under Defendant's theory, a manufacturer may build a
device with specific features clearly designed to enable
infringement of a patent – features utterly unnecessary to its non-
infringing uses – and escape liability for contributory
infringement to the extent that there are non-infringing features
that are "integral" to the functioning of the larger product.

For this proposition, Defendant cites to <u>Vita-Mix Corp. v.</u>
<u>Basic Holding, Inc.</u>, 581 F.3d 1317 (Fed. Cir. 2009).  In <u>Vita-Mix</u>,
the defendant manufactured a blender equipped with a "stir stick"
that could be used in either an infringing way or a non-infringing
way.  <u>Id.</u> at 1327-28.  The plaintiff argued that the non-infringing
use was separate from the stir stick itself, because it relied on
"additional, separable features" of the blender, such as a "ball
and socket joint, interrupted ribbing, and rubber o-ring."  <u>Id.</u>
The court held that those features were not "separable," but were
"directly related" and "useful only" to the non-infringing use *of*
*the stir stick*.  <u>Id.</u>  Thus the court found that the non-infringing
use of the stir stick – the *feature* in question – was not
insubstantial.

But what <u>Vita-mix</u> did *not* hold is that a feature with no
substantial non-infringing use cannot be evaluated as a separate
component if it relies on other, non-infringing features that are
"integral" to the functioning of the device as a whole.  To use the

blender in Vita-mix as an analogy, nothing in that case suggests that the stir stick cannot be evaluated as a separate feature solely because it works in conjunction with the blending feature of the machine, which is non-infringing.  Such a reading of Vita-mix would seem to vitiate Ricoh: in *most* cases involving complex electronic machinery the infringing feature is likely to rely on certain underlying operations, such as a power supply or an operating system, that enable non-infringing uses as well.

Additionally, although Ricoh spoke of a "separable" non-infringing feature, 550 F.3d at 1337, later cases confirm that the key inquiry is whether the *infringing* feature is separable from the product into which it has been "embedded."  In i4i Ltd. P'ship v. Microsoft Corp., the Federal Circuit found that an embedded XML editor, rather than Microsoft Word as a whole, was the relevant "material or apparatus" under the statute because "some versions of Word 2003 included the custom XML editor, while others did not." 598 F.3d 831, 849 (Fed. Cir. 2010).  Similarly, in Lucent Technologies, Inc. v. Gateway, Inc., the court found that a date-picking tool, and not Microsoft Outlook as a whole, could infringe a patent, because Microsoft could have sold Outlook without the date-picker and "offered the date-picker for sale as a separate download."  580 F.3d 1301, 1320 (Fed. Cir. 2009).

Thus, if the "captive portal" and "PMS billing" features have no substantial non-infringing use, and if they are so isolated from the non-infringing uses of the gateway device as a whole that the device could be sold without those features, then those features can be the relevant "components" or "apparatuses" for purposes of analyzing substantial non-infringing uses under § 271(c).

1    Whether these conditions are met is, of course, a factual

2    determination best left for later in the litigation.

3    **4.   Whether All Components of the System Must Be Exported**

4    A claim for export infringement lies under § 271(f)(1) when a

5    defendant exports "all or a substantial portion of the components

6    of a patented invention" and actively induces their combination

7    into a patented system outside the United States.

8    Defendant argues that Plaintiff has not alleged that Defendant

9    exported "multiple components" for assembly abroad.  (Sec. 271

10   Motion at 18:19-20.)  To the extent that Defendant is arguing that

11   § 271(f)(1) requires that a defendant have, itself, exported

12   multiple components, that argument is not correct.  Sec. 271(f)(1)

13   only requires the defendant to have exported a "substantial

14   portion" of the components of a patented system to be assembled

15   outside the United States.  "Substantial portion" is not defined by

16   the statute, but the Federal Circuit has held that "liability under

17   § 271(f)(1) may attach for export of a single component" – at least

18   when the component is a "main" and "major" component of the

19   patented device and the device "would be inoperable" without it.

20   Promega Corp. v. Life Technologies Corp., 773 F.3d 1338, 1356 (Fed.

21   Cir. 2014).

22   In its reply, Defendant argues instead that *all* the components

23   of the infringing system must be exported from the United States,

24   whether manufactured or sold by the defendant or not: "The Federal

25   Circuit has specifically held that *both components* of the

26   infringing combination must be exported 'for assembly' abroad . . .

27   ."  (Sec. 271 Reply at 14:14-15 (citing Pellegrini v. Analog

28   Devices, Inc., 375 F.3d 1113, 1117 (Fed. Cir. 2004).)  But this

1   seems to be a misreading of <u>Pellegrini</u>, which held that the

2   *defendant's* product must be physically exported from the United

3   States but said nothing about components manufactured and sold

4   abroad by others.  375 F.3d at 1117-18.

5       Plaintiff need not allege that all components in the system

6   were exported from the United States; the key question is whether

7   Defendant exported *its* products for integration into an infringing

8   abroad.

9   **IV.   CONCLUSION**

10      The motions to dismiss are DENIED.

11

12  IT IS SO ORDERED.

13

14  Dated: April 3, 2015

15                                    DEAN D. PREGERSON
                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28