O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOMADIX, INC.,                    )  Case No. CV 14-08256 DDP (VBKx)
                                  )
            Plaintiff,            )  **ORDER GRANTING IN PART AND**
                                  )  **DENYING IN PART MOTION TO**
     v.                           )  **DISMISS/STRIKE COUNTERCLAIMS AND**
                                  )  **DEFENSES**
HOSPITALITY CORE SERVICES         )
LLC, d/b/a BLUEPRINT RF,          )  [Dkt. No. 54]
                                  )
            Defendant.            )
_____   )

     Presently before the Court is Plaintiff's motion to dismiss
certain counterclaims and strike corresponding affirmative
defenses.

I.   **BACKGROUND**

     Plaintiff alleges that Defendant has infringed multiple
patents[1] of a system that redirects users' web browsers to a portal
page so they may access a computer network in various locations.
(Lezama Decl., Ex. 9, column 3, line 40. See also Dkt. No. 47 at

_____

     [1]The patents at issue are U.S. Patent Nos. 6,636,894 ("the
'894 patent"), 6,868,399 ("the '399 patent"), 8,156,246 ("the '246
patent"), 8,266,266 ("the '266 patent"), 8,266,269 ("the '269
patent"), 8,364,806 ("the '806 patent"), 8,788,690 ("the '690
patent"). (FACC at 15.)

1-3 (background section of Court's prior order, discussing the patents at issue in more detail).)  Defendant alleges that Plaintiff's system is essentially the same as a procedure that became available for public use in 1998.  (Defendant's First Amended Counterclaim ("FACC"), ¶ 42.)

Defendant alleges that for some of the patents, Plaintiff failed to make the required disclosures of prior art in the field.[2]  (Id. at ¶ 13.)  For example, the '894 patent includes a process whereby a gateway device facilitates a "handshake" with the computer, allowing the user to be redirected to a portal page.  (Lezama Decl., Ex. 9, lines 25-40.)  Defendant alleges that this same procedure is disclosed in Plaintiff's other prior art references, including Short et al. (Assigned to Nomadix, Inc.) WO98/404990, but Plaintiff neglected to submit these disclosures to the patent examiner.  (FACC, ¶ 18.)

Defendant provides other similar examples of omitted prior art.  (Id. at ¶¶ 19-24, 26-30.)  E.g., Defendant alleges that Patent No. 6,182,139 ("the '139 patent") describes a materially similar gateway procedure which Plaintiff failed to disclose.  (Id. at ¶ 26.)  Allegedly, for the series of patents at issue, Plaintiff purposely omitted this information in order to intentionally deceive the patent examiner.  (Id. at ¶ 14.)  In some of Plaintiff's patent applications, Defendant alleges, it did make

---

[2] "Prior art" may consist of references to any documentary or non-documentary sources, such as academic publications, other patents, or known unpatented inventions, that help "to determine the novelty and nonobviousness of claimed subject matter in a patent application or patent."  1 Donald S. Chisum, Chisum on Patents at Gl-18 (Matthew Bender ed., 2015).

1  prior art disclosures, but this information was buried in lengthy
2  disclosure sections.  (Id. at ¶ 12.)
3      Defendant further alleges that Plaintiff's patents are not
4  enforceable due to either "inequitable conduct" on Plaintiff's part
5  during prosecution, "prosecution laches," estoppel, or unclean
6  hands.  (Id. at ¶¶ 82-85.)
7      Defendant also alleges that the '894, '246, '266, '269 and
8  '806 patent (the "captive portal" patents) are duplicative since
9  they discuss nearly identical processes.  (Id. at ¶ 8.)
10     Defendant also alleges that it "designed around" Plaintiff's
11 patents by "practicing prior art" – that is, its allegedly
12 infringing systems are simply combinations of known, pre-existing
13 inventions or technology.  (Id. at ¶ 62.)
14     Specific allegations as to each patent are as follows:
15 **- the '894 and '399 patents:**
16     Defendant alleges that "Nomadix failed to submit its own
17 material prior art publications to the Patent Office," including an
18 international patent application ("WO 98/40990") and a series of
19 papers written by Leonard Kleinrock, a "named inventor" of the
20 Nomadix patents.  (Id. at ¶¶ 13-15.)  Defendant alleges that the
21 patents contain claims as to redirection technology that are
22 materially similar to the prior publications, (id. at ¶¶ 17-19),
23 and further alleges in general terms an intent to deceive the
24 patent examiner.  (Id. at ¶¶ 15, 18, 20.)
25 **- the '399 and '690 patents:**
26     Defendant also alleges that Plaintiff's attorney made
27 misleading statements distinguishing another reference to prior art
28 with regard to the '399 patent.  (Id. at ¶ 21.)  Defendant alleges

that Plaintiff "extended its misleading arguments" as to the '399 patent when it "silently allowed the claims of the '690 patent to be granted" without comment on the prior art relevant to both. (Id. at ¶ 21, 23.)  Defendant also alleges that the '690 patent application "include[d] unreasonably voluminous prior-art disclosures having the effect of obscuring the most important prior-art references (commonly referred to as "burying" the most important references). (Id. at ¶ 12.)  Defendant also alleges that Plaintiff failed to disclose prior art ("Brendel" and "RFC 1919") having to do with "TCP/IP handshakes" and "transparent proxying." (Id. at ¶¶ 26-30.)  Defendant alleges that Plaintiff's attorney knew of the references and intentionally or recklessly omitted them.  (Id. at ¶ 31.)

**- the '246, '266, '269, and '806 patents:**

Defendant alleges that Plaintiff also "buried" the most important prior art references in the applications for these patents.  (Id. at ¶¶ 12, 24.)  Defendant alleges that Plaintiff's attorney omitted the Brendel and RFC 1919 prior art from some of the applications and "buried" them in a mass of other references in other applications.  (Id. at ¶¶ 26-31, 39.)  Defendant also alleges that these patents depend on the '894 patent, and therefore they are "infected" with the inequitable conduct alleged as to that patent.  (Id. at 38.)

Defendant therefore alleges counterclaims seeking declaratory judgments that their systems do not infringe Plaintiff's patents, that the patents are invalid, and/or that the patents are unenforceable on equitable grounds.

1    Plaintiffs have filed this motion to dismiss those

2    counterclaims and strike associated affirmative defenses.

3    **II.   LEGAL STANDARD**

4         In order to survive a motion to dismiss for failure to

5    state a claim, a complaint need only include "a short and plain

6    statement  of the claim showing that the pleader is entitled to

7    relief." <u>Bell Atl. Corp. v. Twombly,</u> 550 U.S. 544, 55 (2007)

8    (quoting <u>Conley v. Gibson,</u> 355 U.S. 41, 47 (1957)).  A complaint

9    must include "sufficient factual matter, accepted as true, to state

10   a claim to relief that is plausible on its face." <u>Ashcroft v.</u>

11   <u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at

12   570).  When considering a Rule 12(b)(6) motion, a court must

13   "accept as true all allegations of material fact and must construe

14   those facts in the light most favorable to the plaintiff." <u>Resnick</u>

15   <u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).

16       A court may strike any "redundant, immaterial, impertinent, or

17   scandalous matter" from a pleading.  Fed. R. Civ. P. 12(f).  "A

18   'redundant' matter consists of allegations that constitute a

19   needless repetition of other averments . . . ." <u>Wilkerson v.</u>

20   <u>Butler</u>, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  "'Immaterial' matter

21   is that which has no essential or important relationship to the

22   claim for relief or the defenses being pleaded.  'Impertinent'

23   matter consists of statements that do not pertain, and are not

24   necessary, to the issues in question." <u>Fantasy, Inc. v. Fogerty</u>,

25   984 F.2d 1524, 1527 (9th Cir. 1993) <u>rev'd as to other matters</u>, 510

26   U.S. 517 (1994).

27       "[T]he function of a 12(f) motion to strike is to avoid the

28   expenditure of time and money that must arise from litigating

spurious issues by dispensing with those issues prior to trial . . . .” <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983).

**III. DISCUSSION**

As an initial matter, the Court notes that the parties' briefs in this motion and especially the counterclaim are densely written and filled with both technical jargon and unexplained patent terms of art.  While none of this is fatal to the parties' arguments, it does increase the likelihood of misunderstanding and outright error.

A federal judge in Illinois recently adopted the following requirement of the lawyers in a patent case: “All submissions must be brief and nontechnical and eschew patent-law jargon. Since I am neither an electrical engineer nor a patent lawyer, and since this case will be tried to a jury, the parties' lawyers must translate technical and legal jargon into ordinary language.” <u>New Medium LLC v. Barco N.V.</u>, No. 05 C 5620, 2009 WL 1098864, at *1 (N.D. Ill. Apr. 15, 2009).  The Court expects the same in future filings in this case.

**A.    Non-Infringement**

Defendant's first counterclaim seeks declaratory judgment that their systems do not infringe Plaintiff's patents because they merely “practice[] prior art” – that is, they rely on technology that predates Plaintiff's patents.  (FACC, ¶¶ 58-62.)

However, the Federal Circuit has explained that “practicing prior art” is not a defense to an infringement claim.

Spectramed's argument is that Baxter, in order to establish literal infringement, must prove . . . [that] Spectramed's

1  accused devices must not be an adoption of the combined

2  teachings of the prior art. This is not a correct statement of

3  the law governing patent infringement. There is no requirement

4  that the accused device be nonobvious in light of the prior

5  art, or otherwise be itself patentable . . . . Questions of

6  obviousness in light of the prior art go to validity of the

7  [plaintiff's] claims, not to whether an accused device

8  infringes.

9  Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1583

10  (Fed. Cir. 1995). Defendant does not dispute this point in its

11  opposition.

12      This is not to say Defendant cannot plead noninfringement.

13  For example, the counterclaim alleges that Defendant "designed

14  around" Plaintiff's patent, (FACC, ¶ 62), which is a perfectly

15  legitimate defense.  TiVo Inc. v. EchoStar Corp., 646 F.3d 869, 883

16  (Fed. Cir. 2011) ("[L]egitimate design-around efforts should always

17  be encouraged as a path to spur further innovation."). But the

18  Court emphasizes that reliance on prior art alone is insufficient

19  to overcome an infringement claim.

20  **B.   Enforceability of Plaintiff's Patents**

21      Defendant's third counterclaim seeks declaratory judgment that

22  Plaintiff's patents are not enforceable under a variety of

23  equitable doctrines.

24  **1.   Inequitable Conduct**

25      Defendant alleges that Plaintiff engaged in "inequitable

26  conduct" during the prosecution of its patents by failing to

27  disclose prior art and by "burying" the art in a way that made it

28  hard for the patent examiners to find.

7

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011). "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO" by withholding or misrepresenting a "*known* material reference." Id. at 1290 (emphasis in original). "[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law. Unlike validity defenses, which are claim specific, inequitable conduct regarding any single claim renders the entire patent unenforceable." Id. at 1288 (citations omitted). The Federal Circuit therefore requires that the party invoking the doctrine "prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." Id. at 1290.

At the pleading stage, of course, Defendant is not required to provide evidence of knowledge, materiality, and intent. But those elements must still be pled, and because the doctrine sounds in fraud, they must be pled with the particularity required by Rule 9(b) – that is, the party must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326-28 (Fed. Cir. 2009). "[I]ntent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b).

With the above legal standards in mind, the Court begins with some observations as to Plaintiff's arguments in favor of dismissal.

### a.    Identity of Specific Individuals

Plaintiff argues that Defendant's pleading is insufficient because it identifies, for example, "Nomadix including Mr. Edwards" as having knowledge of, and withholding or misrepresenting, material references. (FACC, ¶ 18.)  Plaintiff analogizes to two cases.  First, in Exergen, the court held that it was not sufficiently particular to plead that "Exergen, its agents and/or attorneys . . . both knew of the material information and deliberately withheld or misrepresented it."  Exergen, 575 F.3d at 1329.  But here Defendant does not merely refer to "agents" or "attorneys"; it names specific individuals.  Second, in Everlight Electronics Co. v. Nichia Corp., the court held that although a plaintiff company had named individuals associated with the company, it had not "identified the 'who' of the material misrepresentations because they have not identified 'the specific individual associated with the filing or prosecution of [Nichia's patents-in-suit] who both knew of the material information and deliberately withheld or misrepresented it.'"  907 F. Supp. 2d 866, 872 (E.D. Mich. 2012) (quoting Exergen, 575 F.3d at 1329).  But in this case, Mr. Edwards and two other identified individuals, Mr. Duan and Mr. Kesler, were the attorneys who filed the patent applications.  Thus, to the extent that the pleadings identify these specific individuals who were "associated with the filing or prosecution of" Nomadix's patents, they are adequately pled as to the "who" prong.

Plaintiff nonetheless argues that the pleading is inadequately particular because in some places it refers to the company rather than the attorney. (E.g., FACC, ¶ 24 ("Nomadix failed to bring [a]

1  reference to the examiner's attention . . . .").)    The Court does

2  not find such occasional references to the corporate identity to be

3  fatal, however, where the attorneys who filed the patent

4  applications are clearly identified and are alleged to have the

5  requisite knowledge.

6  **b.  Knowledge**

7      Plaintiffs argue that Defendants do not specifically allege

8  the requisite knowledge on the part of Nomadix's attorneys, for two

9  reasons.  First, Plaintiffs point to language stating that the

10  attorneys "knew or reasonably should have known" of material

11  references.  Plaintiffs point out that the standard is actual

12  knowledge, and "should have known" does not suffice to meet that

13  standard.  (Mot. at 9.)  Plaintiff is correct that the phrase "knew

14  or reasonably should have known" misstates the standard.  But it

15  does *include* an allegation of actual knowledge, and could therefore

16  easily be amended or simply construed[3] to state the correct

17  standard, as long as facts reasonably supporting an inference of

18  knowledge are also alleged.  <u>Exergen</u>, 575 F.3d at 1327 n.4&5

19  (allegations requiring an inference of scienter satisfy Rule 9(b)

20  as long as the facts provide a basis for making such an inference

21  and the inference is a reasonable one).

22      Plaintiff also argues that some of the allegations are

23  conclusory and inadequate, because it is not enough to allege that

24  a company should have known the contents of its own prior

25

26      [3] <u>See, e.g.</u>, <u>Segal v. Fifth Third Bank, N.A.</u>, 581 F.3d 305, 310
27  (6th Cir. 2009) "Courts may look to-they must look to-the substance
   of a complaint's allegations . . . .  Otherwise . . . enforcement
28  would reduce to a formalistic search through the pages of the
   complaint for magic words . . . and nothing more.").

applications.  (Mot. at 8 (citing <u>Exergen</u>, 575 F.3d at 1330).)
That is true, but Defendant is alleging something more specific:
that the *lawyers* charged with engaging in patent prosecution for
Nomadix were aware of the contents of the company's previous patent
applications as to very similar systems or mechanisms.  That is a
plausible inference from their role in patent prosecution and their
duty of due diligence, which presumably includes investigating the
company's own prior patents.

Indeed, in most cases, the allegation here is that Plaintiff's
attorney's knew of specific parts of the prior patent applications,
which was not the case in <u>Exergen</u>.  Plaintiff states in the motion
that the pleading fails to allege knowledge of "*the specific
portions* of [the] prior art that were allegedly material." (Mot.
at 9.)  This argument is somewhat baffling, however, in light of
extensive references to specific portions of prior art. (<u>E.g.</u>,
FACC, ¶ 18 (stating that Edwards knew or should have known of page
3 and page 13 of <u>Short et al. (Assigned to Nomadix, Inc.)</u>
WO98/404990); <u>id.</u> at ¶ 21 ("Nomadix (including Mr. Edwards) knew or
reasonably should have known of the materiality of 5,987,430 at
Fig. 21 and column 18 beginning at line 21."); <u>id.</u> at ¶ 22 ("See
Van Horne 5,987,430 at Fig. 9 (blocks 641, 643 645 describe the
DHCP process); and column 15 beginning at line 61 . . . ."); <u>id.</u> at
¶ 24 ("Nomadix including Mr. Kesler knew or reasonably should have
known of the materiality [of] Van Horne 5,987,430 at Fig. 21 and
column 18 beginning at line 21 . . . .").

**c.   Intent**

As with knowledge, intent may be pled generally, and the
pleading may rely on inferences.  Additionally, it is well-

11

established that "[t]he requirements of Rule 9(b) may be 'relaxed as to matters peculiarly within the opposing party's knowledge,' if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery." In re Gupta Corp. Sec. Litig., 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (quoting Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)). Obviously, intent is almost always peculiarly within the opposing party's knowledge, and it is appropriate to allow some leeway to a pleading party.[4]

Plaintiff appears to argue (Reply at 19) that, to show deceptive intent, a party should point to some sort of "smoking gun" statement, as was alleged in iLife Technologies Inc v. AliphCom, No. 14-CV-03345-WHO, 2015 WL 890347, at *1 (N.D. Cal. Feb. 19, 2015) (counterclaimant alleged that inventor stated in email, "I know how to take down our fall detection patents . . . and a really determined effort to invalidate the patents, if performed skillfully could succeed"). While such a statement is certainly sufficient to establish intent, it will rarely be the case that a party can provide, at the pleading stage, such a specific piece of evidence, and Rule 9(b) does not require that they do so.

---

[4]Wright and Miller also argue that courts applying Rule 9(b) must "take account of the general simplicity and flexibility contemplated by the federal rules," noting that the forms accompanying the Federal Rules give, as an example of a pleading satisfying Rule 9(b), the following: "Defendant C.D. on or about . . . conveyed all his property, real and personal to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to." 5A Fed. Prac. & Proc. Civ. § 1298 (3d ed.). "The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84.

1     The Court does note, however, that Defendant in several places
2  pleads that Plaintiff's attorneys acted with intent or
3  recklessness.  That is not the correct standard, but as with the
4  "knew or should have known" pleading discussed above, intent can be
5  alleged by inference as long as the facts pled reasonably support
6  the inference.  Exergen, 575 F.3d at 1327 n.4&5.

7  **d.   Materiality**

8     Plaintiff argues that Defendant has not successfully alleged
9  materiality, because Defendant does not specifically tie particular
10 claims in the patent applications to specific allegedly material
11 portions of the allegedly omitted references.  (Mot. at 10.)  As
12 the Court notes above, however, there are in fact adequate
13 references to specific material.  (See, e.g., FACC, ¶ 18.)

14    Plaintiff also argues that Defendant's more specific pleadings
15 as to materiality are implausible.  (Id. at 10-11.)  However, there
16 is a line between determining plausibility and attempting to divine
17 what the facts will show or come to ultimate conclusions.  "[A]
18 court must take the allegations as true, no matter how skeptical
19 the court may be."  Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009).
20 Particularly in a patent case like this, where the arguments depend
21 on close comparison of descriptions of complex technologies, there
22 is a danger of taking a side on the underlying fact of similarity
23 or difference between the two inventions.  At the pleading stage,
24 an allegation that a specific portion of a prior art reference
25 contains a description of a technique or component that is also
26 used in the patent application will suffice to show materiality.

27 **e.   Conclusions**

28

1    With the above as guiding principles, the Court concludes as
2    follows.

3    As to all patents, Defendant sufficiently alleges the "who" of
4    the inequitable conduct counterclaim by identifying specific
5    attorneys who are alleged to have engaged in the inequitable
6    conduct.

7    As to the '399 and '690 patents, Defendant sufficiently
8    alleges materiality, knowledge, and intent.  Defendant alleges
9    specific portions of prior art that are material to the patent
10   applications and alleges sufficient facts to support an inference
11   that Plaintiff's lawyer had sufficient state of mind, because
12   Defendant alleges that he knew of the prior art and affirmatively
13   misrepresented it to the patent examiner.  (FACC, ¶ 21.)  This
14   certainly supports an inference of intent to deceive.  The "knew or
15   should have known" and "intent or recklessness" language discussed
16   above does not correctly state the standard as to knowledge and
17   intent, but because the facts alleged strongly support an inference
18   of both knowledge and intent, the Court finds that the claim is
19   adequately pled.

20   As to the '894 patent, Plaintiff argues that Defendant's
21   allegation of materiality of WO 98/40990 is undermined by fact that
22   the patent survived a reexamination in which different prior art
23   was submitted that "disclose[d] a TCP/IP handshake in connection
24   with a gateway redirection procedure in which the gateway proxies
25   (spoofs) the requested address."  (FACC, ¶ 26.)  The sections of WO
26   98/40990 that Defendant pleads as material describe "the nomadic
27   router pretending to be the host which the router expects to
28   communicate with," (FACC, ¶ 18), which appears to describe

14

1  essentially the same process.  Plaintiff therefore argues that
2  Defendant has not pled facts suggesting that but for the omission
3  of WO 98/40990, the patent examiner would not have granted the '894
4  patent.

5      However, the ultimate grant of a patent is not dispositive on
6  the question of materiality, although it can be highly probative.
7  Molins PLC v. Textron, Inc., 48 F.3d 1172, 1179 (Fed. Cir. 1995).
8  The pleading adequately alleges that WO 98/40990 was material prior
9  art.

10     Plaintiff argues that Defendant fails to adequately plead the
11 requisite mental state as to the '894 patent.  The counterclaim
12 states only that "Mr. Edwards[] was, or should have been, aware of
13 the relevance of these references [i.e., the international patent
14 application and the academic papers], which were published by a
15 named inventor or Nomadix itself."  (FACC, ¶ 20.)  Apart from the
16 erroneous "or should have been" framing, however, Defendant alleges
17 sufficient facts to raise an inference of knowledge.  As discussed
18 above, it is a plausible inference that Edwards knew of Nomadix's
19 own prior art, because he was an attorney charged with prosecuting
20 a patent as to very similar technology on the company's behalf, and
21 a reasonable attorney would familiarize himself with the company's
22 relevant prior art.  And for reasons discussed above (see note 4
23 and accompanying text), the Court finds that Defendant's general
24 pleading as to intent satisfies Rule 9(b), given the totality of
25 the circumstances alleged.

26     As to the remaining patents, the claims get somewhat more
27 complicated.  According to the patent documents submitted by
28 Plaintiff, it would appear that the '266, '246, '269, '806, and

15

'690 patents all directly descend from the '849 patent, and the '246, '269, '806, and '690 patents descend from the '266 patent. (Decl. Mark Lezama ISO Mot. Dismiss, Exs. 9-14.)

Defendant alleges that Plaintiff failed to submit WO 98/40990 and the so-called "Brendel" prior art when applying for these later patents.  Plaintiff argues, however, that these omissions do not matter, because the parent patent applications included these references.  For example:

> The '246 patent descends directly from the '266 patent, and the same PTO examiner handling both cases considered WO 98/40990 in examining the '266 patent.  Similarly, the '246 patent ultimately descends from the '894 patent, and the PTO considered Brendel when reexamining the '894 patent.

(Reply at 20 (citations omitted).)

Prior art disclosed as to a parent application need not be disclosed again in continuation applications.  ATD Corp. v. Lydall, Inc., 159 F.3d 534, 547 (Fed. Cir. 1998) (affirming summary judgment of no inequitable conduct because information in a parent application need not be resubmitted); Brunswick Corp. v. United States, 34 Fed. Cl. 532, 593 (1995) (no inequitable conduct where the prior art is "included in the file for plaintiff's parent application, which the CIP examiner is *required* to review as part of the same prosecution"); MPEP § 609.02(A)(2) The examiner will consider information which has been considered by the Office in a parent application when examining . . . a continuation-in-part application filed under 37 CFR 1.53(b).  A listing of the information need not be resubmitted in the continuing application . . . .").

16

1    Thus, as Plaintiff argues, it is not, by itself, inequitable
2   conduct not to include the reference to WO 98/40990 in the '246
3   application, because that application explicitly refers back to the
4   '266 application.  The same thing is true of the others that refer
5   back to '266.

6    Plaintiff points out that even on Defendant's pleadings, the
7   reexamination of '894 took place before the applications for these
8   patents, Brendel *was* considered in the reexamination, and the above
9   patents are continuations of the '894 patent.  (FACC, ¶¶ 26-27;
10  Opp'n at 13.)

11   However, as to continuations of the '894 patent, it is not as
12  clear that the Brendel reference would have been included in the
13  later patent application.  Plaintiff points to no case, and the
14  Court is aware of none, stating that an applicant for a
15  continuation patent need not submit information that was *not*
16  submitted with the parent application and was only submitted for a
17  *reexamination* of the parent.  Particularly where, as in this case,
18  the reexamination yielded no amendments to the patent, (Lezama
19  Decl., Ex. 9 at 1308), it is not clear that a patent examiner
20  considering a later continuation application would necessarily have
21  scoured the reexamination record for new references not listed in
22  the parent application.  And where information has been submitted
23  as to the parent application in some technical sense, but not
24  actually considered, it should be resubmitted with the continuation
25  patent application.  MPEP § 609.02(B)(2).  Thus, it is not clear
26  that the <u>ADT</u> rule applies here.

27   Defendant also alleges that the applications for these patents
28  "bury" references to other material prior art, including WO

1   98/40990 and something called "RFC 1919,"[5] in a mass of other, less

2   relevant references.  Plaintiff cites to <u>Fiskars, Inc. v. Hunt Mfg.</u>

3   <u>Co.</u> for the proposition that "[a]n applicant can not be guilty of

4   inequitable conduct if the reference was cited to the examiner."

5   221 F.3d 1318, 1327 (Fed. Cir. 2000).  But other cases have held

6   that "'burying' a particularly material reference in a prior art

7   statement containing a multiplicity of other references can be

8   probative of bad faith." <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d

9   1172, 1184 (Fed. Cir. 1995).  <u>Fiskars</u> did not deal directly with

10  the burying question and likely does not foreclose an inequitable

11  conduct claim based on intentional burying.  Robert Brendan Taylor,

12  *Burying*, 19 Mich. Telecomm. & Tech. L. Rev. 99, 107-08 (2012).

13      Exactly under what circumstances "burying" supports an

14  inference of bad faith is unclear from the cases.  Nonetheless,

15  "[i]ntent [to deceive] need not be proven by direct evidence; it is

16  most often proven by a showing of acts, the natural consequences of

17  which are presumably intended by the actor." <u>Molins</u>, 48 F.3d at

18  1180.  Thus, for example, in <u>CIVIX-DDI, LLC v. Hotels.com, L.P.</u>,

19  the applicant cited an enormous number of prior art references

20  (nearly 600), and it was alleged that the patent examiner had

21  actually asked for clarification because of the volume of

22  references.  711 F. Supp. 2d 839, 849 (N.D. Ill. 2010).  In <u>eSpeed,</u>

23  <u>Inc. v. Brokertec USA, L.L.C.</u>, the applicant's supporting

24  declarations and exhibits "amounted to over two thousand pages" and

25  _____

26      [5]The counterclaim does not clearly identify RFC 1919, but it
    does state that it "describes a standard procedure known as
27  'transparent proxying' in which a gateway conducts a connection
    handshake while proxying (spoofing) a requested website as a part
28  of sending a response message while proxying (spoofing) the
    requested website." (FACC, ¶ 29.)

were worded so as to obscure the relationship with prior art.  417

F. Supp. 2d 580, 598 (D. Del. 2006) aff'd, 480 F.3d 1129 (Fed. Cir.

2007).  Thus, "burying" is really nothing more than a species of

the Rule 9(b) intent standard, which requires specific facts

supporting an inference of an intent to deceive.  In the burying

cases, the volume of paper in combination with other facts provided

that factual basis.

Here Defendant's position is that "over 1,000 references

consuming on the order of 10,000 pages" in the various patent

applications is excessive and "buries" the key prior art.  (Opp'n

at 22-23.)  This, in turn, gives rise to an inference of bad faith

– i.e., an intent to deceive.

To prove intent under a burying theory, Defendant will have a

high bar to clear at trial.  See Star Scientific, Inc. v. R.J.

Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008) (to

prove intent to deceive by circumstantial evidence, "the inference

must not only be based on sufficient evidence and be reasonable in

light of that evidence, but it must also be the single most

reasonable inference able to be drawn from the evidence to meet the

clear and convincing standard.").  But at the pleading stage, given

the totality of the facts pled – multiple overlapping and cross-

referenced applications, some of which may have omitted a key

reference that was only available in the '894 reexamination, and

which (Defendant alleges) are overstuffed with irrelevant

references – the Court finds that Defendant adequately states a

counterclaim for inequitable conduct.

**C.    Prosecution Laches, Estoppel, and/or Unclean Hands**

1    Prosecution laches is an equitable defense to a charge of

2    patent infringement that renders a patent unenforceable due to "an

3    unreasonable and unexplained delay in prosecution that constitutes

4    an egregious misuse of the statutory patent system under the

5    totality of the circumstances." Cancer Research Tech. Ltd. v. Barr

6    Labs., Inc., 625 F.3d 724, 728 (Fed. Cir. 2010).  To state a claim

7    for prosecution laches, the defendant must allege actual prejudice

8    to either the defendant or the public.  Id. at 729.

9    Defendant's theory of prosecution laches is essentially that

10   Plaintiff has submitted multiple, prolix, and unreasonably complex

11   patent applications, allegedly as continuations of earlier patents

12   in the basic technology, but in reality simply intended to multiply

13   the time it takes the Patent Office to issue the patents, thereby

14   creating an "unreasonable and unexplained delay." (See FACC, ¶ 84;

15   Opp'n at 22-23.)

16   The Federal Circuit has instructed that "[t]here are

17   legitimate grounds for refiling a patent application which should

18   not normally be grounds for a holding of laches, and the doctrine

19   should be used sparingly lest statutory provisions be unjustifiably

20   vitiated." Symbol Technologies, Inc. v. Lemelson Med., Educ. &

21   Research Found., 422 F.3d 1378, 1385 (Fed. Cir. 2005).  However,

22   the court there also held that:

23       [R]efiling an application solely containing previously-allowed

24       claims for the business purpose of delaying their issuance can

25       be considered an abuse of the patent system.  In particular,

26       multiple examples of repetitive refilings that demonstrate a

27       pattern of unjustifiably delayed prosecution may be held to

28       constitute laches. Taken singly, the delay in the prosecution

                                    20

1    on any one particular application will surely not appear to
2    merit relief by the courts in equity. On the other hand, an
3    examination of the totality of the circumstances, including
4    the prosecution history of all of a series of related patents
5    and overall delay in issuing claims, may trigger laches.
6  Id. at 1385-86 (citation omitted).

7       In Symbol, an inventor submitted numerous continuation-in-part
8  applications, both while the parent application was still pending
9  and afterward.  Id. at 1380.  The parent patent issued seven years
10 after the original application was filed.  Id.  Ultimately, the
11 issuance of the patents in that case may have been delayed by as
12 much as 39 years.  Id.  The trial court made an explicit finding
13 that the inventor "systematically extended the pendency of his
14 applications by sitting on his rights, and sequentially filing one
15 application at a time so that he could maintain copendency while
16 waiting for viable commercial systems to be designed and marketed."
17 Symbol Technologies, Inc. v. Lemelson Med., Educ. & Research
18 Found., Ltd. P'ship, 301 F. Supp. 2d 1147, 1156 (D. Nev. 2004).
19 The district court found, and the Federal Circuit affirmed, the
20 prosecution laches rendered the patents unenforceable.  Symbol, 422
21 F.3d at 1384.  Thus, Defendant's theory that filing multiple,
22 redundant continuations-in-part over a number of years, in order to
23 delay patent issuance and effectively extend one's patent monopoly
24 as the field develops, is a potentially viable one.

25      However, the facts of this case do not lend themselves to a
26 theory of prosecution laches.  First, as Plaintiff points out, the
27 doctrine had greater application in prior decades when patent terms
28 were measured from the date the application was *approved*.  The

1   possibility of extending the lifetime of one's monopoly created a

2   perverse incentive to unreasonably prolong the prosecution process.

3   That incentive has now been removed by a change to the patent

4   statutes setting the term from the date of *filing*.  35 U.S.C. §

5   154(a)(2) ("Such grant shall be for a term beginning on the date on

6   which the patent issues and ending 20 years from the date on which

7   the application for the patent was filed . . . ."); Cancer

8   Research, 625 F.3d 724 at 732 ("[T]he facts of this case are not

9   likely to be frequently repeated, as patent terms are now measured

10  from effective filing date.").  In this case, Plaintiff cannot

11  extend its monopoly past the 20-year mark, no matter how many

12  continuation applications it files, because all those offspring

13  patents would have a priority date that is the same as the parent.

14  35 U.S.C. § 154(a)(2); Mohsenzadeh v. Lee, 5 F. Supp. 3d 791, 794

15  (E.D. Va. 2014).

16       Second, Plaintiff's '894 patent (parent to nearly all the

17  other patents at issue) was issued in a reasonable four-year

18  timeframe, and none of the continuation applications were filed

19  until the parent application was approved.  Thus, there appears to

20  have been no delay of the issuance of the parent patent.  That

21  patent set out many, if not most, of the claims at issue – indeed,

22  one of Defendant's arguments for invalidity is that Plaintiff's

23  patents are largely redundant with previous patents, including

24  '894.  (FACC, ¶¶ 64-67.)  Thus, the industry may be presumed to

25  have been aware of the general outline of Plaintiff's claims, and

26  its presumptive legal right to those claims, at least since the

27  issuance of the '894 patent.  This makes it less likely that others

28

22

1  in the industry could be substantially prejudiced by uncertainty as

2  to Plaintiff's claims.

3       Finally, even if the patent issuance had been delayed,

4  Defendant must allege more than the general harm that comes from an

5  extended patent monopoly.  Rather, in claiming prejudice, it must

6  plead that "either the accused infringer or others invested in,

7  worked on, or used the claimed technology during the period of

8  delay."  <u>Cancer Research Tech. Ltd. v. Barr Labs., Inc.</u>, 625 F.3d

9  724, 729 (Fed. Cir. 2010).  Defendant does not plead such facts.

10      The Court therefore finds that Defendant's pleading does not

11 adequately allege prosecution laches.

12      Defendant also argues that Plaintiff's multiple, prolix, and

13 complex patent applications are not in good faith, but are intended

14 to create a "legal thicket" for would-be challengers to the

15 patents, significantly raising the cost of administrative

16 challenges as to both the per-patent fees charged by the Patent

17 Office and the lawyer-hours required to review long, dense patent

18 documents.  (Opp'n at 24-25.)  Defendant therefore argues that some

19 equitable reason must exist to declare the patents unenforceable,

20 whether prosecution laches, estoppel, unclean hands, or some other

21 theory.  (FACC, ¶¶ 84-85.)  Defendant also asks the Court to

22 "extend the law to recognize this defense" if it is not supported

23 by existing cases.  (<u>Id.</u>)

24      The defense of unclean hands is essentially a cousin to

25 inequitable conduct that lowers the materiality threshold on a

26 showing of "egregious misconduct" like perjury or the suppression

27 of evidence.  <u>See</u> <u>Human Genome Sciences, Inc. v. Genentech, Inc.</u>,

28 No. 2:11-CV-6519-MRP, 2011 WL 7461786, at *8 (C.D. Cal. Dec. 9,

1  2011); <u>Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.</u>,

2  No. SACV 11-00982 JVS, 2012 WL 2357307, at *7 (C.D. Cal. June 13,

3  2012) <u>rev'd on other grounds</u>, 731 F.3d 1239 (Fed. Cir. 2013).

4  Defendant does not explain how this doctrine could be extended to

5  encompass its equitable complaints about the multiplicity,

6  prolixity, and complexity of Plaintiff's patents.  Similarly, the

7  Court is not aware of any theory of estoppel that would provide

8  Defendant the relief it seeks.

9       Moreover, by allowing for continuation patents, 35 U.S.C. §

10  120, Congress has determined that some multiplicity of patents on

11  the same subject matter is appropriate, even if that means that

12  there is some increase in costs to parties seeking review of

13  patents.  Moreover, Congress has recently reexamined the

14  administrative review process, suggesting that it is aware of, and

15  has taken into account, the interaction between that process and

16  the availability of continuation patents.  Leahy-Smith America

17  Invents Act, Pub.L. No. 112-29, 125 Stat. 284 (2011).  Where

18  Congress has set a balance of rights between competing interests,

19  courts should not lightly undertake to adjust that balance.

20       Of course, if the continuation patents are frivolously filed,

21  they may be declared invalid.  Defendant has asserted a

22  counterclaim requesting Plaintiff's patents be declared invalid,

23  and likely that is its best remedy here.

24  **IV.  CONCLUSION**

25       The motion to dismiss (and strike related affirmative

26  defenses) is GRANTED IN PART.  Defendant's counterclaim for non-

27  infringement is adequately pled, with the caveats discussed above.

28  Defendant's counterclaim for inequitable conduct is adequately pled

as to all patents.  Defendant's counterclaim as to prosecution laches is DISMISSED.  Defendant's counterclaims as to estoppel and unclean hands are DISMISSED.  All affirmative defenses corresponding to the DISMISSED counterclaims are likewise stricken.

IT IS SO ORDERED.

Dated: June 29, 2015

DEAN D. PREGERSON
United States District Judge