O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NOMADIX, INC., | ) | Case No. CV 14-08256 DDP (VBKx) |
| | ) | |
| Plaintiff, | ) | **ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |
| | ) | |
| v. | ) | [Dkt. Nos. 72, 81, 85, 88] |
| | ) | |
| HOSPITALITY CORE SERVICES LLC, d/b/a BLUEPRINT RF, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Presently before the Court are: (1) Plaintiff Nomadix, Inc.'s ("Nomadix") Motion for Summary Judgment on Infringement of the '246 Patent; (2) Defendant Hospitality Core Services LLC d/b/a Blueprint RF's ("Blueprint") cross-Motion for Summary Judgment on Noninfringement of the '245 Patent; (3) Defendant Blueprint's Motion for Partial Summary Judgment of Patent Invalidity Under 35 U.S.C. § 112 and Double Patenting; and (4) Defendant Blueprint's Motion for Partial Summary Judgment of Patent Invalidity Under 35 U.S.C. §§ 102 and 103. (Dkt. Nos. 72, 85, 81, 88.) After considering the parties' submissions and hearing oral argument, the Court enters the following Order.

I.   **BACKGROUND**

This Court has discussed the patents and claims at issue in this case in its two prior Orders so the recitation will be brief here.  (See Dkt. Nos. 47, 69.)

Nomadix's patents at issue here cover the process and mechanisms of connecting a user device to an internet network through a gateway device.  The gateway

> complete[s] a handshake with the user device and redirect[s] the user device's web browser to a portal page, all while appearing to be the . . . web server that the user's device sought to access.  Once redirected to the portal page, the user can take steps to obtain network access, such as verifying an identity or agreeing to payment terms.

(Pl. Mot. Summ. J., dkt. no. 72, at 1.)  Nomadix particularly targets its product and system at the hospitality industry, such as hotel internet connection and other similar services.

Blueprint is a competitor of Nomadix in the field of hospitality internet connection.  This suit is based on the alleged infringement of Nomadix's patents[1] by Blueprint's "Dominion" gateway devices that also connect users to internet networks through a portal page redirect.  (See id.; First Am. Compl.)

Presently disputed in these motions are two main issues: (1) the infringement or lack thereof of Nomadix's '246 patent by Blueprint's Dominion gateway device; and (2) the validity or lack thereof of several Nomadix patents: '246; '266; '269; '806; '690.

///

---

[1]    Nomadix has asserted seven patents in this suit: U.S. Patent Numbers 6,636,894 (the '894 patent); 6,868,399 (the '399 patent); 8,156,246 (the '246 patent); 8,266,266 (the '266 patent); 8,266,269 (the '269 patent); 8,364,806 (the '806 patent); and 8,788,690 (the '690 patent).

## II.   LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

Summary judgment motions are evaluated under the "substantive evidentiary standard of proof that would apply at the trial on the merits" for a particular case. Anderson, 477 U.S. at 252. Issued patents are presumed valid, and the burden is on the party asserting invalidity to prove such invalidity. 35 U.S.C. § 282(a). This presumption of invalidity requires clear and convincing evidence to overcome. See, e.g., Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001); Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000). By contrast, patent infringement, "whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence." Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1279 (Fed. Cir. 2011).

///

///

4

## III. DISCUSSION

### A.   Cross-Motions for Summary Judgment on Infringement of '246 Patent

Plaintiff Nomadix has moved for summary judgment on infringement of its '246 patent; Defendant Blueprint has cross-moved for summary judgment on noninfringement of the same.

Nomadix argues that Blueprint's device literally infringes the '246 patent based on the undisputed facts of how the device functions and on the ordinary meaning of the claim terms in the '246 patent. (See Pl. Mot. Summ. J. ("Pl. MSJ"), dkt. no. 72.) Nomadix asserts that the motion can and should be decided based on claim construction — Nomadix's position is that the '246 patent's claim terms are broad (and valid) under their ordinary meaning and that Blueprint's device reads on those claim terms. See id. Blueprint's position is that the claim terms are either narrower than Nomadix proposes and so the claims do not read on Blueprint's device, or that Nomadix's broad interpretation of the claims renders the claims invalid. (Def. Opp'n & Cross-MSJ ("Opp'n"), dkt. no. 85.) Thus, both parties agree that this motion is essentially a claim construction issue.

### 1.   Legal Standard for Infringement

Patent infringement suits require the patentee to show that the defendant "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). "Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process,' which in turn necessitates a

determination of 'what the words in the claim mean.'" <u>Markman v.</u>
<u>Westview Instruments, Inc.</u>, 517 U.S. 370, 374 (1996).

"A literal patent infringement analysis involves two steps:
the proper construction of the asserted claim and a determination
as to whether the accused method or product infringes the asserted
claim as properly construed." <u>Vitronics Corp. v. Conceptronic,</u>
<u>Inc.</u>, 90 F.3d 1576, 1580-81 (Fed. Cir. 1996).  Claim construction
is a matter of law, with the court examining both intrinsic and
extrinsic evidence of meaning, with the court first examining the
intrinsic evidence as it "is the most significant source of the
legally operative meaning of disputed claim language." <u>Id.</u> at
1582.  Intrinsic evidence includes "the patent itself, including
the claims, the specification, and, if in evidence, the prosecution
history." <u>Id.</u>  Extrinsic evidence, or evidence outside this set of
reference, is only examined if the intrinsic evidence is
insufficient to determine the meaning and scope of the claims.  <u>Id.</u>
at 1583.

This analysis "holds true whether it is the patentee or the
alleged infringer who seeks to alter the scope of the claims." <u>Id.</u>
Claims are construed the same way for both validity and
infringement.  <u>See</u> <u>W.L. Gore & Assocs., Inc. v. Garlock, Inc.</u>, 842
F.2d 1275, 1279 (Fed. Cir. 1988), <u>abrogated on other grounds</u> <u>Zoltek</u>
<u>Corp. v. United States</u>, 672 F.3d 1309 (Fed Cir. 2012).

### 2. Claim Construction

Both parties agree that this cross-motion turns on claim
construction.  (<u>See</u> Pl. MSJ at 11; Opp'n at 13.)

According to Nomadix, the undisputed facts demonstrate that
the Dominion gateway device "satisfies every limitation of claims 6

and 7 of the '246 patent." (Pl. MSJ at 11.) Blueprint's theory of noninfringement, according to Nomadix, is based on interpreting terms from claim 6 narrowly. (<u>Id.</u>) According to Nomadix, "[i]t is undisputed that, if the claims are not limited in the way Blueprint proposes, then the Dominion gateway satisfies all the claim limitations." (<u>Id.</u>)

This appears consistent with how Blueprint characterizes its position. (Opp'n at 13.) Blueprint argues that its device only infringes if Nomadix's broad claim construction is accepted, but if such a broad claim construction is accepted, then the '246 patent is invalid for lack of adequate written description, obviousness, and anticipation, as described in Blueprint's other motions. (<u>Id.</u> at 14-15.) According to Blueprint, under its narrow construction of the claim terms, Nomadix's patents are valid but Blueprint's Dominion device does not infringe. (<u>Id.</u> at 15-16.)

The parties make several claim construction arguments, running from claim indefiniteness to the meaning of preamble language to means-plus-function claims to the doctrine of equivalents and so on. (<u>See</u> Pl. MSJ at 15-16; Opp'n at 16-21, 23-25; Pl. Opp'n at 9-12, 16-20; Pl. Reply at 18-23; Def. Reply at 8-15.) The Court notes that the parties have in one sense raised all doctrines related to claim construction, which is rarely conducive to an efficient analysis. But what is clear from the parties' papers is that the nub of the dispute is two claim terms from claim 6 of the '246 patent, which the parties appear to agree controls whether Blueprint infringes: "redirection server" and "processor." (<u>See, e.g.</u>, Pl. MSJ at 20-22 (Plaintiff's motion also discusses two other terms that are not discussed by Blueprint in its papers); Opp'n at

1  18; Pl. Opp'n at 1; Pl. Reply at 5-6; Def. Reply at 3.)  Thus, the

2  Court will examine only these two terms under the standard claim

3  construction analysis from <u>Markman</u> and determine infringement on

4  that basis.

5      Claim 6 of the '246 patent reads, with the terms at issue

6  emphasized:

> 6. A network management system, configured to redirect a
> computer to a portal page, the computer being connected to
> the network management system by a network, the system
> comprising:
>     a communications port configured to receive an
> incoming request from the computer relating to accessing an
> external server; and
>     a **processor** configured to receive incoming data from
> a **redirection server**, the incoming data identifying a
> portal page server to which the computer should be
> redirected, the portal page server being different from the
> external server; and
>     the **processor** further configured to send to the
> computer, an outgoing response based on the incoming data,
> the outgoing response configured to be responsive to the
> incoming request from the computer, and the outgoing
> response configured to cause the computer to initiate a
> second request for content from the portal page server;
>     wherein the **processor** is further configured to
> complete a connection handshake while appearing to be the
> external server, and wherein the outgoing response includes
> a source address corresponding to the external server,
> whereby the outgoing response appears to have originated
> from the external server.

## 3.  Processor

21      Blueprint interprets "processor" as a "network gateway

22  processor or system that routes messages to the redirection server

23  through stack address translation using packet address modification

24  and connects a user's computer to the network without reconfiguring

25  the network settings or installing the network settings or

26  installing reconfiguration software on the user's computers," and

27  which "excludes DHCP reconfiguration of network settings on user's

28  computer."  (Opp'n at 14 (table).)

1    Nomadix argues that the claim term "processor" does not
2    require claim construction.  (Pl. Opp'n at 3; Pl. Reply at 6
3    (tables).)  To the extent this Court does construe the term,
4    Nomadix argues that "processor" should be given its ordinary
5    meaning, which does not require formal claim construction in part
6    because Blueprint "has admitted that each Dominion gateway includes
7    a processor." (Pl. Reply at 6 (citing Lezama Decl. Ex. 3 (RFA
8    18)).)

9    The Court notes that under <u>Markman</u>, the Court determines claim
10   meaning primarily based on claim language, prosecution history, and
11   the specification.  But here, there is no reason for a formal claim
12   construction of the term "processor" because it is a well-known
13   term in the relevant art.  Blueprint's argument attempts to *add*
14   language to the claim term rather than construct it.  Blueprint's
15   definition ensures its device is excluded from possible
16   infringement, but the construction is not based on the claim
17   language or specification.  Nowhere does the specification or claim
18   provide that DHCP is excluded, and there are instances in the
19   patent that discuss the invention with DHCP.  (<u>See, e.g.,</u> '246
20   Patent Fig. 50B.)  Blueprint's approach is not a claim construction
21   based on intrinsic evidence; instead, it is an argument to limit
22   the claim language to exclude DHCP reconfiguration.

23   Further, Blueprint's discovery response in Exhibit 3 to the
24   Lezama declaration states that the Dominion device has a processor,
25   showing that the term has an ordinarily understood meaning and that
26   the Dominion device is consistent with that meaning.  As there is
27   no reason to depart from this ordinary meaning, the Court declines
28   to make a formal construction of "processor" at this time.

### 4.   Redirection Server

According to Blueprint, "redirection server" means "server that creates a browser redirect message through stack address translation using packet address modification," which would "exclude[] the local or forced proxy disclosed by *Slemmer*." (Opp'n at 14 (table).)

Nomadix argues that "redirection server" means "a server that prepares a message instructing a computer receiving the message to redirect its browser to content differing from what was initially requested." (Pl. Opp'n at 3; Pl. Reply at 6 (tables).)

Essentially, this claim construction dispute centers on "redirection" — Nomadix's argument is that "redirection" covers redirection through stack address translation using packet address modification as well as through other means, and Blueprint's argument is that "redirection" only covers redirection through stack address translation using packet address modification.

As Nomadix points out, there is no language in the claim that limits redirection to redirection through stack address translation using packet address modification.  But Blueprint argues that Nomadix's plain language approach is unsupported by the specification and disclosures of the patent.  An infringement motion is not the place for an argument regarding patent invalidity based on lack of enablement or adequate written description, which Blueprint falls into several times in its briefing.  But the Markman analysis does require the Court to examine the specification and prosecution history as well as the plain language of the claims in constructing the claim language.  Thus, simply looking at the language of the claim is not enough here.

1    The specification does not appear to limit the claims,
2    however, to stack address translation using packet address
3    modification.  Blueprint is not convincing in arguing that the
4    absence of a clear embodiment of redirection involving more than
5    stack address translation is required to affirmatively include
6    other embodiments in the claims, particularly if such other methods
7    would be known to a person having ordinary skill in the art.  The
8    language of the patent notes that "one embodiment" would be limited
9    to stack address translation, but that does not mean that this is
10   the *only* embodiment, and in fact it implies that other embodiments
11   of the invention would not be so limited.  Further, Nomadix points
12   to other embodiments discussed in the patent that do not mention
13   stack address translation at all and that accomplish the
14   redirection claim limitation.  (See Pl. Reply at 13 (citing '246
15   patent col. 36 l. 5-29).)  Therefore, the Court declines to limit
16   the claim to only stack address translation using packet address
17   modification because such a limit is unsupported by the plain
18   language and specification of the patent.

19           **5.   Means-Plus-Function Claims**

20       Blueprint argues that claims 6 and 7 of the '246 patent are
21   means-plus-function claims, which means the claims must be
22   functionally defined as limited by the patent's particularly
23   disclosed embodiments as set forth in 35 U.S.C. § 112 ¶ 6.  (Opp'n
24   at 18-21.)  Blueprint alleges that the claim terms at issue,
25   "processor" and "redirection server," are "generic computer terms
26   or 'nonce words' understood as 'verbal constructs not recognized
27   structure' tantamount to using the word 'means' invoking § 112,
28   par. 6 under the *Williamson* standard."  (Id. at 19 (quoting Mass.

11

1    <u>Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software</u>, 462
2    F.3d 1344, 1354 (Fed. Cir. 2006).)   According to Blueprint, the
3    redirection server in claim 6 that performs packet translation or
4    redirection is limited to stack address translation using packet
5    address modification because that is the "*only* packet redirection
6    technique described" in the patent and shown in figures 11A and
7    11B.  (Opp'n at 20.)   As Blueprint's Reply details, the claim
8    language defines "redirection server" at such a high level of
9    structural and functional detail that "a person of ordinary skill
10   in the art would have no way of knowing from the claim language the
11   basis on which the 'redirection server' generates the 'incoming
12   data identifying a portal page server to which the computer should
13   be redirected.'" (Reply at 11 (quoting '246 patent, claim 6).)

14       Nomadix denies that § 112 ¶ 6 applies to the terms "processor"
15   and "redirection server" in claim 6, explaining that the terms "are
16   not mere verbal constructs" and instead "are commonly used terms in
17   the computer and networking fields referring to well-understood
18   computing structures." (Pl. Opp'n at 11-12.)   Further, Nomadix
19   points out that Blueprint uses the terms "processor" and "server"
20   in its proposed claim construction of those very terms, thus
21   indicating, according to Nomadix, that the terms "convey well-
22   understood, meaningful structure that does not require further
23   elaboration in this case." (<u>Id.</u> at 12.)   Lastly, Nomadix argues
24   that Blueprint's constructions "are not designed to address any
25   means-plus-function issues but rather to import limitations into
26   the claims under the pretense of claim interpretation." (<u>Id.</u>)

27       In <u>Williamson</u>, the Federal Circuit stated the standard for
28   determining if particular claim language falls into § 112 ¶ 6 as

"whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citing Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1583 (Fed Cir. 1996)). While there is a presumption that a claim without the term "means" is not a claim that falls into § 112 ¶ 6, that presumption can be overcome with a showing that the claim terms "fail[] to 'recite sufficiently definite structure' or else recite[] 'function without reciting sufficient structure for performing that function.'" Id. (quoting Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed. Cir. 2000)). "Nonce" claim terms are those terms that act as fillers because they do not describe an actual structure:

> Generic terms such as "mechanism," "element," "device," and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they "typically do not connote sufficiently definite structure" and therefore may invoke § 112, para. 6.

Id. at 1350 (citing Abacus Software, 462 F.3d at 1354).

In Williamson, the claim term "distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module" was held to be a means-plus-function claim term. Id. The Federal Circuit noted that the claim's format was "consistent with traditional means-plus-function claim limitations" in that it "replaces the term 'means' with the term 'module' and recites three functions performed by the 'distributed learning control module.'" Id. The

13

1  court held that "module" was a "well-known nonce word" that "does
2  not provide any indication of structure because it sets forth the
3  same black box recitation of structure for providing the same
4  specified function as if the term 'means' had been used."  Id.

5       Further, the prefix "distributed learning control" did not
6  provide structure because the written description of the patent
7  described the terms at too high a level and "the claim does not
8  describe how the 'distributed learning control module' interacts
9  with other components in the distributed learning control server in
10 a way that might inform the structural character of the limitation-
11 in-question or otherwise impart structure."  Id.  The court lastly
12 found unavailing the testimony of an expert who claimed to be able
13 to perform the claim limitations by reading the claim and the
14 specification of the patent because "the fact that one of skill in
15 the art could program a computer to perform the recited functions
16 cannot create structure where none otherwise is disclosed."  Id.

17      "A limitation has sufficient structure when it recites a claim
18 term with a structural definition that is either provided in the
19 specification or generally known in the art."  Apple Inc. v.
20 Motorola, Inc., 757 F.3d 1286, 1299 (Fed. Cir. 2014), overruled on
21 other grounds by Williamson, 792 F.3d 1339.  As the Federal Circuit
22 has noted, "looking for traditional 'physical structure' in a
23 computer software claim is fruitless because software does not
24 contain physical structures," and instead, the structure "is
25 understood through, for example, an outline of an algorithm, a
26 flowchart, or a specific set of instructions or rules."  Id. at
27 1298.  Further, a claim term can denote structure "by describing
28 the claim limitation's operation, such as its input, output, or

14

connections," which means "how the function is achieved in the context of the invention." Id. The Court notes that the claim term "analyzer server" was not discussed by the Federal Circuit argued by either party in the Apple case as being a means-plus-function claim term. See id. at 1304 (providing claim construction of the term "an analyzer server for detecting structures in the data, and for linking actions to the detected structures"; the claim term "processor" was similarly not disputed).

Here, the claim term "processor" is a structural term that cannot be reasonably disputed by Blueprint to be a "verbal construct[] not recognized [as] structure." (Opp'n at 18-19.) The processor in claim 6 has many configurations, but those configurations are what provide both operation and function to the term "processor." A closer question is the term "redirection server." The claim language surrounding the term is:

> a **processor** configured to receive incoming data from a **redirection server**, the incoming data identifying a portal page server to which the computer should be redirected, the portal page server being different from the external server

The "redirection server" sends data to the processor that results in the user computer's browser being redirected to the portal page server, which eventually results in the connection handshake with the network management system rather than the external server that the user computer was originally attempting to access. A "server" is also a well-known structural term. It is included in Blueprint's own proposed construction of "redirection server." Redirection of the data packets can be accomplished through different means, as Blueprint's noninfringement arguments have

15

1    attempted to show, but that does not mean that the claim term lacks

2    sufficient structure.

3        Turning to the specification of the '246 patent, it provides

4    embodiments of the invention that include descriptions of packet

5    redirection and browser redirection, thus cutting against a finding

6    that the claim is a means-plus-function claim.  For example, figure

7    50B provides a flowchart that includes connection instructions for

8    both DHCP users and non-DHCP users, as well as a simple instruction

9    to "perform any needed translation or redirection" before

10   processing the packet.  ('246 Patent Fig. 50B.)  As the written

11   description clarifies, "[o]ne embodiment for performing the step of

12   providing any needed translation or redirection, as specified in

13   Fig. 50, is described in steps 5, 6, and 7 of Fig. 11A." ('246

14   Patent col. 112 l. 12-14.)  Looking at Figure 11A, no stack address

15   translation or packet modification is mentioned, much less

16   required, in order to achieve the flowchart's result of

17   redirection.  ('246 Patent Fig. 11A.)

18       The patent's specification further provides for redirection

19   through browser redirection:

20       Redirecting the user to a login page can include
         redirecting a browser located on the user's computer to the
21       login page.  Furthermore, redirecting the browser located
         on the user's computer can include receiving a Hyper-Text
22       Transfer Protocol (HTTP) request for the destination
         address and responding with an HTTP response corresponding
23       to the login page.

24   ('246 Patent col. 11 l.15-21.)  Another embodiment of the invention

25   discloses using an Authentication, Authorization and Accounting

26   ("AAA") server to perform the needed redirection.  ('246 Patent

27   col. 11 l. 35-40.)  Stack address translation is mentioned as

28   another embodiment for redirection:

> [T]he user can be redirected from the portal page via Home Page Redirect (HPR) and Stack Address Translation (SAT) to a location, such as a login page, established to validate new users.  SAT and HPR can intervene to direct the user to a webserver (external or internal) where the user has to login and identify themselves.

('246 Patent col. 23 l. 19-25 (referencing the "Redirection Application," which is Nomadix's '894 patent).)  At another point, the specification notes that "the nomadic router is able to redirect all outbound packets from the host computer to itself" and that "redirection can be accomplished in several ways," describing redirection through: (1) "Proxy ARP Packet Interception and Host Reconfiguration," (2) "Promiscuous Mode Packet Interception," and (3) "Dynamic Host Configuration Protocol (DHCP) Service."  ('246 Patent col. 30 l. 59-67; col. 31 l. 1-44.)

As a last example of the redirection discussion in the patent's detailed description, the specification states that,

> According to one aspect of the present invention, when a user initially attempts to access a destination location, the gateway device, AAA server or portal page redirect unit receives this request and routes the traffic to a protocol stack on a temporary server, which can be local to the gateway device.

('246 Patent col. 36, l. 5-10.)  Each of the three different redirection servers can have a different method of redirection. The gateway device uses Home Page Redirect, which uses stack address translation that "is accomplished by redirecting the user to a protocol stack using network and port address translation to the portal server than can be internal to the computer network or gateway device." ('246 Patent col. 35 l. 52-62.)  The HPR and SAT method is just one embodiment provided by the specification in the patent.  At another part of the specification, the AAA server is

17

described as able to use either SAT or dynamic address translation (DAT) to redirect.  ('246 Patent col. 48 l. 20-27.)

In all, the specification makes clear that the claim term "redirection server" can include several embodiments.  A "server" is clearly structural and together, "redirection server" has operational meaning based on the specification.  Thus, the Court holds that claim 6 is not a means-plus-function claim.

### 6.   Infringement

Taking as true Blueprint's admission that its Dominion device has a processor, and taking that term to mean the same thing as in the '246 patent claims as discussed above, the only question for infringement according to the parties' papers is whether Blueprint's device also performs redirection as defined in the patent's claims.

The Dominion gateway performs redirection through its IPFW FWD command, which adds a "forwarding tag" to the user's data packets in order redirect the packets.  (See Def. Reply at 15-22.)  Under the Court's construction of the claim term "redirection," the IPFW FWD command redirects the packets just as in claim 6 of the '246 patent.  IPFW FWD command redirection does modify the packet, albeit differently than packet address modification within the user's packet, as Blueprint alleges Nomadix does.  Blueprint's method modifies the address packet because the IPFW FWD command adds a forwarding tag, thus modifying the packet by adding that forwarding tag to the packet.  This method is an equivalent to what Blueprint alleges Nomadix's invention does.

In fact, as Nomadix argues, Blueprint's method of redirection would result in infringement regardless of the Court's means-plus-

function analysis because literal infringement also includes
equivalents under § 112 ¶ 6.  (Pl. Opp'n at 16.)  As the statute
states, means-plus-function claims cover "the corresponding
structure, material, or acts described in the specification and
equivalents thereof."  35 U.S.C. § 112.  The IPFW FWD command is an
equivalent to what Blueprint proposes this Court interpret
"redirection server" to mean, namely, "server that creates a
browser redirect message through stack address translation using
packet address modification."  (Opp'n at 14.)  Under any theory of
literal patent infringement, the IPFW FWD command is an equivalent
to Nomadix's method of packet address modification.  Therefore, the
Court finds that under the above claim construction, Blueprint's
Dominion device infringes the '246 patent.

**B.    Motion for Summary Judgment on Patent Invalidity under 35
        U.S.C. § 112 and Double Patenting**

Blueprint has also filed for partial summary judgment, arguing
that patents '246, '266, '269, '806, and '690 are invalid under 35
U.S.C. § 112 and under a double patenting theory.  (See Def. Mot.
Summ. J. of Patent Invalidity under 35 [U.S.C.] § 112 and Double
Patenting ("MSJ for 112"), dkt. no. 81 at 1.)  Blueprint only cites
to the '246 patent throughout its motion, explaining that "the
specifications of the '246, '269, '806, and '690 patents are nearly
identical" so that the citations to '246 are "representative."[2]
(Id. at 1 n.1.)  Blueprint's theory is (1) if the patents are read
as broadly as Nomadix seems to say they should be, then the patents
are invalid because the claims are not supported by the patents'

-----

[2]    Presumably, Blueprint also wants to include the '266
patent in this list, because Blueprint otherwise does not discuss
the '266 patent at all other than to argue for its invalidity.

written description; (2) that the patents fail a "concise requirement" from Section 112; (3) that the patents' specifications do not enable a person having ordinary skill in the art to practice the claimed invention; and (4) that the patents all cover the same invention, so they fail for double patenting.

In response, Nomadix argues primarily that Blueprint has failed to meet the standard required at summary judgment for invalidating a patent under Section 112.  (Pl. Opp'n to Def. MSJ for 112 ("Opp'n 112") at 2-4.)  Nomadix claims that Blueprint "rests its entire motion on conclusory attorney argument," lacks evidence to support its broad motion ("108 claims spanning five patents"), and "does not identify a single claim by number until page 24 of its opening brief," which is the only place where Blueprint addresses claim language.  (Id. at 2-3.)  On the merits, Nomadix argues that (1) there is no patent invalidity argument based on concision; (2) Blueprint's written description argument is unsupported by evidence, what evidence is present is disputed, and Blueprint has applied the wrong legal standard; (3) Blueprint fails to make an argument about enablement, much less provide evidence; and (4) Blueprint fails to demonstrate that any two claims from the patents at issue have "identical scope" so as to double patent, or that any of the claims render another patent obvious in spite of Nomadix's terminal disclaimers.  (Id. at 4-6 (concise), 10-20 (written description), 20-21 (enablement), 21-30 (double patenting).)

In its reply, Blueprint argues (1) there is a concision requirement in the Patent Act and the patents involved here are overly verbose in an attempt to confuse courts and future

defendants; (2) the written descriptions of the patents at issue do not disclose or teach an invention that would make Blueprint's Dominion device infringing; (3) "the written description and enablement inquiries are similar" in this case and the specifications in these patents fail to enable the invention as claimed by Nomadix; and (4) there is double patenting here because by Nomadix's own construction, the claims of the challenged patents would literally infringe each other.  (Def. Reply ISO MSJ for 112 ("Reply 112") at 2-9 (concise), 9-15 (written description), 16-19 (enablement), 19-20 (double patenting).)

      **1.   Concision**

It is basic hornbook law that Section 112 contains three requirements for an inventor seeking a patent: (1) written description; (2) enablement; and (3) best mode.  <u>See</u> 3 Donald S. Chisum, Chisum on Patents § 7.01 (Matthew Bender 2014); <u>see also</u> <u>Univ. of Rochester v. G.D. Searle & Co., Inc.</u>, 358 F.3d 916, 921 (Fed. Cir. 2004) (describing the three requirements of Section 112 of the 1952 Patent Act).  The word "concise" is included in the statutory section as part of the second requirement of enablement:

> (1) the specification shall contain a **written description** of the invention; (2) the specification shall contain a written description . . . of the manner and process of making and using it [i.e., the invention] in such full, clear, concise, and exact terms as to **enable** any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same; and (3) the specification . . . shall set forth the **best mode** contemplated by the inventor of carrying out his invention.

<u>Univ. of Rochester</u>, 358 F.3d at 921 (quoting 35 U.S.C. § 112) (internal quotations and brackets omitted) (emphasis added).

Blueprint would have a fourth requirement be made out of the inclusion of the word "concise" in the statute.  However, Blueprint

1  acknowledges that there are no controlling cases — or any cases —
2  finding this "concise" language in the statute to be a formal
3  requirement, much less a requirement that can lead to the
4  invalidation of a patent.  Therefore, this Court declines the
5  opportunity to create an additional requirement in Section 112.

6              **2.   Written Description**

7       As explained above, Section 112 does have a written
8  description requirement.  <u>See</u> 35 U.S.C. § 112.  This requires the
9  patentee to "convey with reasonable clarity to those skilled in the
10 art that, as of the filing date sought, he or she was in possession
11 *of the invention*.  The invention is, for purposes of the 'written
12 description' inquiry, *whatever is now claimed*."  <u>Vas-Cath Inc. v.</u>
13 <u>Mahurkar</u>, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).  "The test for
14 sufficiency of support in a patent application is whether the
15 disclosure of the application relied upon reasonably conveys to the
16 artisan that the inventor had possession at that time of the later
17 claimed subject matter."  <u>Id.</u> at 1563 (internal quotation omitted).
18 Compliance with this requirement is a question of fact.  <u>Id.</u>  This
19 requirement is a separate and broader requirement than the
20 enablement requirement.  <u>Id.</u>

21      Blueprint here acknowledges that "[t]o some extent, compliance
22 with the written description requirement may come down to a matter
23 of claim construction."  (MSJ for 112 at 21.)  This is a bit of an
24 understatement — the very legal standard discussed by all parties
25 and this Court above establish that the written description
26 analysis requires claim construction because the relevant question
27 is whether the description demonstrates possession of the
28 invention, the invention being what is claimed.

                              22

1    To that end, Blueprint provided in Exhibit 14 a chart with

2 competing claim constructions for certain words in certain patents.

3 This kind of analysis is insufficient to meet a clear and

4 convincing standard.  Actual quoted language, taken in full context

5 of each of the challenged claims, is what needs to be analyzed;

6 that is, the Court can only consider whether the written

7 description requirement is met for a particular claim after

8 considering the actual claim language, what that language means

9 (its scope and limit), and what the description in the patent

10 provides.

11    The most complete analysis that Blueprint provides regards

12 only the '246 patent, which is provided as marked up by Blueprint

13 in Exhibit 3.  (MSJ for 112 at 22-23; Ex. 3.)  Blueprint argues

14 that

15    [u]nder the broad claim construction that form[s] the basis
     of Nomadix's infringement contentions, the claims of the
16    challenged patents are not limited to captive portal
     redirection utilizing packet address modification.  They
17    therefore fail to comply with the written description
     requirement because the claims cover subject matter that is
18    not described in the specification.

19 (Id. at 22.)  Also, the broad construction of the claims, Blueprint

20 argues, is not supported by the statements in the specification

21 regarding what Nomadix considered its invention or improvement on

22 the prior art, which is not changing the IP settings on the user's

23 computer through the captive portal redirection feature.  (Id.)

24    Lastly, Blueprint argues that the broad view of the claims

25 would cover subject matter that the patent is teaching away from:

26    Specifically, the challenged patents teach away from
     relying exclusively [o]n DHCP to reconfigure the network
27    setting on a user's computer with DHCP, and describe
     transparent address translation as a better alternative
28    allowing computers that do not utilize DHCP to be connected

23

1      to the network. . . . While this teaching is buried in the
       back of the '246 patent, it is upfront and the center of
2      the description of the invention in the priority
       application.

3

4    Id. at 22-23 (citing "'246 at 111/48-112-17; Figs. 50A-B" and "App.

5    Ser. No. 60-111,497 at pp.1-3,5 and Fig. 1 (Ex-2)".)

6         Nomadix takes issue with Blueprint's Exhibit 14 and

7    characterization of Nomadix's claim construction.  (Opp'n 112 at 7-

8    9.)  As Nomadix points out, most of the patents' claim language is

9    ignored, and all 108 claims of the patents that Blueprint appears

10   to be challenging in its motion are not included in the chart, or

11   anywhere in the moving papers.  The Court agrees that such an

12   omission gives rise to triable issues of fact.

13        To the part of Blueprint's argument that is included in the

14   moving papers, Nomadix responds that Blueprint is erroneously

15   arguing that the Patent Act requires "'literal' description of

16   every embodiment of the claimed invention" to be included in the

17   written description.  (Id. at 10.)  This appears to be true,

18   although Blueprint could be making a different argument — it is not

19   entirely clear from the papers.  It appears that Blueprint is

20   arguing that Nomadix is now claiming embodiments including DHCP

21   connection and redirection without static address translation using

22   packet address modification, neither of which Nomadix included in

23   its written description.

24        But Nomadix's Opposition explains that DHCP would be

25   understood by a person having ordinary skill in the art as being

26   included in the scope of the claimed invention.  (Id. at 12-14.)

27   DHCP is also in the '246 patent's specification.  (See, e.g., '246

28   Patent Fig. 50B.)  In addition, Nomadix points to an embodiment in

the '246 patent that, "immediately after discussing embodiments involving stack address translation," does not mention stack address translation but which does include the browser redirection at issue.  (Id. at 13.)  Nomadix's expert claims that "the juxtaposition of these teachings reasonably conveys to one of ordinary skill in the art that stack address translation is not required in the latter embodiment."  (Id.)  And as discussed earlier in the Court's claim construction for the '246 patent, there are many discussions of redirection in the '246 patent's specification that do not require stack address translation using packet address modification.  All of these instances raise triable issues of fact as to Nomadix having possession of the claimed invention, with that invention being as broad as Nomadix claims it is.

Based upon the state of the factual record, and the clear material factual disputes between the parties, the Court cannot find for Blueprint on the written description theory of invalidity because Blueprint has not met the clear and convincing standard of proof.

### 3.   Enablement

Blueprint's enablement argument is found at lines eight through sixteen on page twenty-three of its opening brief.  (Def. MSJ for 112 at 23.)  Blueprint acknowledges that enablement and written description are separate requirements of 35 U.S.C. § 112, but says that "the legal analysis in this case is virtually the same because the challenged patents fail to describe or enable any type of packet redirection that does not utilize packet address modification."  (Def. MSJ for 112 at 23.)  This is the extent of

Blueprint's argument; none of the new arguments or evidence
included in Blueprint's reply brief can be considered by this Court
because such argument and evidence must be raised in the moving
papers to allow the opposing party an opportunity to dispute them.

"Enablement 'is a legal determination of whether a patent
enables one skilled in the art to make and use the claimed
invention.'" Streck, Inc. V. Research & Diagnostic Sys., Inc., 665
F.3d 1269, 1288 (Fed. Cir. 2012) (quoting Hybritech, Inc. V.
Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 (Fed. Cir. 1986)).
"The enablement requirement is met where one skilled in the art,
having read the specification, could practice the invention without
'undue experimentation.'" Id. (quoting In re Wands, 858 F.2d 731,
736-37 (Fed. Cir. 1988).  The specification "need not disclose what
is well-known in the art." Id.  Enablement is a matter of law, but
one with "factual underpinnings," particularly in terms of the
Wands factors for determining whether undue experimentation is
needed to practice the invention.  Id.  "Because patents are
presumed valid, lack of enablement must be shown by clear and
convincing evidence." Id.

Here, there is a lack of clear and convincing evidence.
Because Blueprint's enablement argument is not developed or
supported by evidence tailored and applied to the proper legal
standard — which is not the same as the standard for written
description — this Court cannot find for Blueprint on its motion
for summary judgment based on an alleged lack of enablement.

### 4. Double Patenting

Blueprint's argument for double patenting is that certain
claims in four of the challenged patents "are invalid for statutory

26

double patenting." (Def. MSJ for 112 at 23.) These claims are: for the '246 patent, claims 6, 7, 9, 10, 12-17; for the '266 patent, claims 1, 2, 5-7, 9, 11, 14, 15, 17-20, 22; for the '269 patent, claims 1, 4, 5, 8, 17, 20; and for the '806 patent, claims 1, 2, 4, 5, 17, 19. (Id. at 24.) Blueprint argues that its Exhibit 16 demonstrates that "other than different labels applied to the same elements, the claims have the same scope." (Id.) Further, Blueprint points out that "Nomadix is asserting that all of the claims cover the *same aspect* of the accused product — redirection to a portal page — rather than different aspects of the product," which demonstrates that Nomadix "interpret[s] all of these claims to literally cover the same exact feature." (Id. at 24-25.)

Blueprint also argues that "even if the claims were to be deemed to vary sufficiently to avoid *statutory* double patenting, they are certainly obvious variations of each other and Nomadix failed to enter all of the terminal disclaimers for the '266, '269, and '806 patents required to avoid invalidity for obvious-type double patenting." (Id. at 25.) Blueprint states that "prejudice has attached" so it is too late for Nomadix to provide the missing terminal disclaimers. (Id.)

Nomadix responds that the four challenged patents "belong to the same priority family" and "have always been set to expire on the same day: December 8, 2019," thus, "[t]he four patents therefore do not extend Nomadix's monopoly period." (Opp'n 112 at 24.) Nomadix states that terminal disclaimers were filed with the U.S. PTO for these patents. (Id.) Further, Nomadix argues that Blueprint failed to carry its burden to show by clear and

convincing evidence that "thirty-six claims from four patents are invalid for same-invention double patenting" because no reference patent is established, only attorney argument in an attached exhibit table is provided as evidence, the exhibit does not include all the claim language from the claims at issue, Blueprint itself acknowledges that the claims use different terms, and there is no allegation (or evidence) that all the limitations of one claim appear in another as is needed to show statutory double patenting. (Id. at 25-26.)

Nomadix also states that there is no argument, much less any proof, for obviousness-type double patenting beyond a sentence that the claims are invalid for rendering a later claim obvious. (Id. at 26.) Further, Nomadix claims that its terminal disclaimers preclude this defense. (Id. at 27-29.) It cites Federal Circuit case law stating that a patentee can file a disclaimer even during litigation. (Id. at 28 (citing Boehringer Ingelheim Int'l GMBH v. Barr Labs., Inc., 592 F.3d 1340, 1347-50 (Fed. Cir. 2010) ("[A] patentee may file a disclaimer after issuance of the challenged patent or during litigation, even after a finding that the challenged patent is invalid for obviousness-type double patenting.").)

The double patenting doctrine is meant to prevent a patentee from extending the life of a patent through additional patents on the same invention or through an obvious modification of the original patent. See Sun Pharm. Indus., Ltd. v. Eli Lilly & Co., 611 F.3d 1381, 1384-85 (Fed. Cir. 2010). "The proscription against double patenting takes two forms: (1) statutory double patenting, which stems from 35 U.S.C. § 101 and prohibits a later patent from

covering the same invention, i.e., identical subject matter, as an earlier patent, and (2) obviousness-type double patenting, which is a judicially created doctrine that prevents a later patent from covering a slight variation of an earlier patented invention." Id. at 1384.

Statutory double patenting requires the two (or more) patents to be "identical in scope." In re Goodman, 11 F.3d 1046, 1052 (Fed. Cir. 1993). "Non-statutory, or 'obviousness-type,' double patenting is a judicially created doctrine adopted to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent protection." Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1373 (Fed. Cir. 2005).

For this Court to invalidate four patents for double patenting under either a statutory or non-statutory theory, Blueprint needs to produce clear and convincing evidence to support its argument. See Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1580 (Fed. Cir. 1991). Clear and convincing evidence "places in the fact finder 'an abiding conviction that the truth of [the] factual contentions are highly probable.'" Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)). Here, the Court is not confident that such a showing has been made.

First, Exhibit 16 is the crux of Blueprint's argument that the claims are identical in scope or one patent renders the later ones obvious. However, Blueprint's brief fails to *apply* and *explain* Exhibit 16 in its legal analysis section. The evidentiary burden

1   is on Blueprint as the party alleging invalidity.  A double

2   patenting challenge requires a "claim-by-claim" evaluation.  See

3   Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 942 (Fed. Cir. 1992).

4   While Exhibit 16 purports to do this by putting into a chart most

5   of the claim language of the claims Blueprint alleges to be double

6   patenting with the other one to three patents, in its brief,

7   Blueprint only discusses two particular issues.

8        Blueprint says that "almost all of the claim elements are

9   recited in each patent, and all of the claim elements are recited

10  in at least two patents, with Nomadix merely changing the labels or

11  switching between method claims and functionally defined apparatus

12  claims." (Def. MSJ for 112 at 24.)  The Court will not piece

13  through the evidence for a moving party at summary judgment.

14  Rather, Blueprint needs to either show that the scope of the

15  inventions are identical or are so alike that the later patents

16  extend the life of the earlier patent.  Blueprint has failed to do

17  this.

18       Blueprint's argument that Nomadix's use of the terms

19  "redirection server" in the '246 patent, "redirected destination

20  HTTP server" in the '266 patent, and "redirection data generation

21  module" in the '269 patent is either just changing labels or

22  switching between different kind of claims is just that, an

23  assertion that this is the case, rather than an explanation of how

24  and why that is the case. (See id.)  The same holds true for

25  Blueprint's other points regarding different claim language meaning

26  the same thing or having the same scope.  The scope of the claims'

27  language has not been determined or alleged in this part of the

28

                                  30

brief, thus, the Court has no grounds for finding double patenting at this stage of the case.

Lastly, Blueprint's point about the terminal disclaimers seems to be contrary to the evidence, and there is no prejudice according to the Federal Circuit's case law allowing terminal disclosures to be filed even during litigation.  See Boehringer, 592 F.3d at 1347; Lezama Opp'n Decl. Ex. 1 (providing Nomadix's terminal disclosures for the '866 patent, '246 patent, '266 patent, '269 patent, and '806 patent).

Nomadix raises triable issues of fact regarding double patenting, and Blueprint has failed to develop a record and a claim-by-claim analysis that would allow this Court to rule as a matter of law.  Therefore, based on this lack of a record and without detailed, claim-by-claim analysis, this Court cannot find for Blueprint on its double patenting summary judgment motion.

**C.   Motion for Summary Judgment on Patent Invalidity under 35 U.S.C. §§ 102 and 103**

Blueprint has another motion for partial summary judgment on patent invalidity, arguing that claims 6 and 7 of the '246 patent are invalid under 35 U.S.C. §§ 102 and 103.  (See Def. Mot. Summ. J. of Patent Invalidity under 35 [U.S.C.] §§ 102 and 103 ("MSJ for 102/103"), dkt. no. 88 at 1.)  Blueprint is arguing that the claims are both anticipated and obvious based on the prior art.  (Id. at 17-20.)  The crux of the argument is that, based on Nomadix's alleged "broad" view of the '246 claims, at least two prior art disclosures anticipate and/or render obvious the '246 patent's claims: the Connect Group gateway device and the Slemmer patent (which, when combined with other "secondary references" at the very

31

1    least renders the patent obvious).  (Id. at 24-25.)  Blueprint also

2    argues that if the Court adopts a "narrow" view of the claims, then

3    the claims are invalid for anticipation based on ATCOM white papers

4    and an IPORT gateway device.  (Id. at 25.)

5        Nomadix responds both on the merits of the argument and on a

6    procedural issue.  For the latter, Nomadix states that "Blueprint

7    relies on conclusory attorney argument without any meaningful

8    supporting expert opinions and falls markedly short of carrying its

9    burden.  Ultimately, Blueprint leaves the Court to wade through the

10   600+ page record in search of a viable invalidity theory." (Pl.

11   Opp'n to Def. MSJ for 102/103 ("Opp'n 102/103") at 1.)  As to the

12   merits, Nomadix contends that Blueprint's brief comes down to

13   relying on three prior art references: the Slemmer patent, the

14   Connect Group device, and the IPORT device.  (Id. at 4.)  As

15   Nomadix sees it, all three are related to Blueprint's anticipation

16   argument, and Slemmer is alleged to combine with other prior art

17   references to render Nomadix's patent obvious.  (Id. at 4-5.)

18       On the merits, Nomadix primarily relies on the clear and

19   convincing standard that Blueprint must meet to invalidate the

20   patent.  Nomadix argues that the legal discussion in Blueprint's

21   motion does not explain the appropriate legal standard or the

22   application of the alleged prior art combined with the '246

23   patent's claims at issue; thus, Blueprint cannot overcome the clear

24   and convincing standard.  (See generally id.)  Further, Nomadix

25   argues that the arguments that are set out fail because there are

26   material fact disputes regarding: (1) what the Slemmer patent

27   discloses and what the '246 patent's claims cover; (2) the relevant

28   date for the Connect Group device in terms of the device reading on

32

1  the '246 claims; and (3) whether the IPORT device satisfied the

2  '246 claim limits at the relevant time.  (Id. at 19-28.)

3       In reply, Blueprint alleges that it has a "smoking gun" in the

4  case: "the Connect Group source code" and that this resolves

5  disputes over the timeliness and scope of the invention disclosed

6  by the device.  (Def. Reply ISO MSJ for 102/103 ("Reply 102/103")

7  at 1-2.)  Blueprint also makes several new arguments relating to

8  obviousness not raised in its opening brief as well as proffer new

9  evidentiary arguments.  (Id. at 19-30, exs. 1-8, Q-P.)  However, as

10 discussed above with Blueprint's § 112 arguments, arguments and

11 evidence must be presented in moving papers to give the opposing

12 party notice and opportunity to respond.

13            **1.   Legal Standards for 35 U.S.C. §§ 102 and 103**

14      A party seeking to invalidate a patent by showing it is

15 anticipated or obvious must produce evidence to satisfy a clear and

16 convincing standard of proof.  See Microsoft Corp. v. i4i Ltd.

17 P'ship, 131 S. Ct. 2238, 2242 (2011).

18      Section 102 of the Patent Act covers the novelty requirement

19 for patentability; an argument that a patent fails to meet this

20 requirement must show that the patent is anticipated by prior art.

21 See 35 U.S.C. § 102; Finisar Corp. V. DirecTV Group, Inc., 523 F.3d

22 1323, 1334 (Fed. Cir. 2008).  This is a question of fact, with the

23 anticipation inquiry done "on a claim-by-claim basis" and "a single

24 prior art reference must expressly or inherently disclose each

25 claim limitation."  Finisar, 523 F.3d at 1334.  "Anticipation

26 requires the presence in a single prior art disclosure of all

27 elements of a claimed invention arranged as in the claim."  Connell

28 v. Sears, Roebuck & Co., 722 F.2d 1542, 1548 (Fed. Cir. 1983).

1    Section 103 of the Patent Act requires a patented invention to
2    not be obvious.  35 U.S.C. § 103.  The statute states:

3        A patent for a claimed invention may not be obtained,
         notwithstanding that the claimed invention is not
4        identically disclosed as set forth in section 102, if the
         differences between the claimed invention and the prior art
5        are such that the claimed invention as a whole would have
         been obvious before the effective filing date of the
6        claimed invention to a person having ordinary skill in the
         art to which the claimed invention pertains.
7

8    Id.  Thus, the scope of a court's obviousness inquiry goes beyond
9    examining a single prior art reference that is required to render a
10   patent anticipated under section 102.  Instead, the whole of the
11   prior art can be considered to determine if the patent is obvious,
12   with prior art references being determined by section 102 (a), (b),
13   (e), (f), and (g).  See OddzOn Prods., Inc. v. Just Toys, Inc., 122
14   F.3d 1396, 1401-02 (Fed. Cir. 1997).

15   Further, the Federal Circuit has found that "certain factual
16   predicates are required before the legal conclusion of obviousness
17   or nonobviousness can be reached," namely, the district court must
18   apply and make factual findings of the Graham factors from Graham
19   v. John Deere Co., 383 U.S. 1, 17 (1966).  See Apple Computer, 234
20   F.3d at 26.  The Graham factors are: "(1) the scope and content of
21   the prior art; (2) the differences between the claimed invention
22   and the prior art; (3) the level of ordinary skill in the art; and
23   (4) objective evidence of non-obviousness, such as commercial
24   success, long-felt but unsolved need, failure of others, copying,
25   and unexpected results."  Id. (citing Graham, 383 U.S. at 17).

26   **2.  Anticipation**

27   As discussed above, anticipation requires all limitations of
28   the challenged patent and claims to be in a single prior art

34

reference.  This theory of invalidity requires a claim-by-claim analysis.  At no point does Blueprint's moving brief in this motion make such an analysis.  Therefore, the Court cannot find that Blueprint has met its evidentiary burden at this point.

### 3. Obviousness

First, Blueprint argues that there "is no material dispute about the level of skill in the art, which is not a significant factor in the legal arguments of either party." (MSJ for 102/103 at 21.)  However, the level of ordinary skill in the art is one of the <u>Graham</u> factors, so even if undisputed, the moving party must make a factual showing of what the level is.  The current motion does not contain enough information for the Court to properly make an evaluation of this factor.

Second, Blueprint's prior art references are attached to the motion in the forty-six exhibits.  The references most important to Blueprint appear to be the Connect Group gateway device, the IPORT gateway, and the Slemmer patent, but Blueprint has attached voluminous other patents, non-patent publications, and explanations of the gateway devices in its exhibits to the motion and its reply. (See <u>id.</u> at 21-22.)  The Court requires analysis and factual support to establish the scope and content of the prior art because it is another <u>Graham</u> factor.  While the current motion may contain sufficient factual support for the scope and content of the prior art, the Court also requires some analysis that these references (a) are prior art under the statutory sections; (b) establish the relevant scope of the prior art; and (c) are prior art to the specific claims and patent at issue in this case.

Third, Blueprint's brief has a section for a comparison of the claimed invention to the prior art, as is needed for this Court to make a proper Graham analysis of obviousness. (Id. at 23.) However, the moving brief fails to undertake the comparison. Instead, Blueprint states that "[o]nce the content of the prior art has been established, the invalidity analysis follows directly." (Id.) This may be true; however, at this juncture, the Court cannot tell. The Court is not a technical expert, nor can the Court wade through all the exhibits for the party offering them. Without understanding what all the claims in the '246 patent cover, and without understanding exactly what the prior art references cover, a comparison between the two is impossible. Simply pointing to early discovery responses that are perhaps "evasive" is not enough at this point to support a comparison between the prior art and the claims at issue here. (See id.) What the Court needs is clear and convincing evidence fully explained in the briefing, with the opposing party having the same opportunity to argue based on the proffered evidence and argument.

Further, the exhibits pointed to in the moving papers are more appropriately explained and included in the moving brief's arguments. (See Exs. 42 (claim construction table); Exs. 43-45 (table comparing prior art references to '246 patent).) These exhibits are attorney arguments that can be laid out in a visual form to help aid the Court's understanding, but attorney arguments they are nonetheless. The arguments are not explained in the moving papers, much less in the exhibits themselves. (See id. at 24-25.) The exhibits place unexplained text from the patents and other sources side by side. It is not this Court's job to comb

through prior art references, technical language, or voluminous exhibits and vague arguments in order to tell if a moving party has met their burden, and so this Court is unable to do so at this point.  Therefore, the Court holds it cannot determine that the patent is invalid for obviousness based on the current record.

**IV.   CONCLUSION**

For the reasons stated above, the Court:

GRANTS Nomadix's Motion for Summary Judgment on Infringement of the '246 Patent;

DENIES Blueprint's Cross-Motion for Summary Judgment of Noninfringement of the '246 Patent;

DENIES Blueprint's Motion for Summary Judgment under 35 U.S.C. § 112 and Double Patenting; and

DENIES Blueprint's Motion for Summary Judgment under 35 U.S.C. §§ 102 and 103.

IT IS SO ORDERED.

Dated: January 27, 2016

DEAN D. PREGERSON
United States District Judge